## No. 26021

## Starr Calvert v. State of Colorado, Department of Revenue, Motor Vehicle Division
(519 P.2d 341)

Decided February 25, 1974.

Carl L. Harthun, for plaintiff-appellant.

John P. Moore, Attorney General, John E. Bush, Deputy, Dennis J. Sousa, Special Assistant, for defendant-appellee.

*En Banc.*

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

Pursuant to 1967 Perm. Supp., C.R.S. 1963, 13-4-22(1)(k)(i), the Department of Revenue, Motor Vehicle Division, revoked Starr Calvert's operator's license for a period of six months on the ground that Calvert refused to submit to a blood-alcohol test as required by 1971 Perm. Supp., C.R.S. 1963, 13-5-30(3). The district court affirmed the department's order and Calvert appeals.

During the early morning hours of October 9, 1971, a Denver patrolman observed Calvert driving his car in an erratic manner. He signaled for Calvert to stop. When Calvert pulled over, the officer went over to the car. He smelled a

strong odor of alcohol. At the request of the officer, Calvert got out of his car and staggered as he walked back to the police car. The officer took Calvert to the police station. There Calvert was advised of his so-called *Miranda* rights including his rights to remain silent, to consult with an attorney, and to have the attorney with him during interrogation. At this time, Calvert asked to call his lawyer and his request was refused. The officer completed a form entitled "Advisement Pursuant to Implied Consent Law of the State of Colorado." He gave Calvert a copy of the document and read it to him.

The form sets forth the implied consent law under 1971 Perm. Supp., C.R.S. 1963, 13-5-30(3), and states that a refusal to submit to a chemical test will result in a hearing where he would be required to show cause why the suspect's driver's license should not be revoked for a period of six months.

Calvert refused to sign this form certifying that the advisement had been read to him and that he had been given a copy of the document. Calvert testified that he refused to sign the form because he could not read his copy and that he would not sign anything until he had consulted his attorney. Calvert continued to refuse to sign the form and repeatedly made the request to call his lawyer. Each time his request was refused. As a result the test was never administered. The Department's hearing officer held that the request to have an attorney present before an accused will take the test is deemed to be a refusal. Therefore, Calvert's license. was revoked for six months.

Pursuant to 1971 Perm. Supp., C.R.S. 1963, 13-4-27, Calvert appealed the Department's order to the district court which affirmed. On appeal to this court, Calvert alleges ten errors. We agree with one of his contentions and, therefore, do not reach the merits of his other allegations.

■ Calvert contends that his refusal to take the test should not result in the revocation of his operator's license because he justifiably relied on the *Miranda* warnings when he refused to submit to any test until he talked to his

attorney. On appeal, he does not argue that he actually had a constitutional right to talk with an attorney before choosing whether to submit to the test. As a matter of law, such right does not exist. *See Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; *People v. Brown,* 174 Colo. 513, 485 P.2d 500; *People v. Sanchez,* 173 Colo. 188, 476 P.2d 980; *Blow v. Comm'r of Motor Vehicles,* 83 S.D. 628, 164 N.W.2d 351; *Mills v. Bridges,* 93 Idaho 679, 471 P.2d 66. Rather, he maintains that at the police station he relied on the *Miranda* warnings which he honestly believed gave him the right to make a call before reaching his decision to submit to the test. No evidence was introduced to the contrary. He repeatedly sought to exercise what he then believed to be his right to consult his attorney. Since he was not advised that the right to remain silent and to call a lawyer did not include the right to refuse to take the test until after he called a lawyer, he argues that he should not be penalized for relying on the *Miranda* warnings.

The examiner did not consider the factual question of whether Calvert was misled by the *Miranda* warning. He ruled that when a suspect does not submit to the test because he requests to call his attorney first, it is deemed a "refusal" as a matter of law. This is generally true, but we hold that what appellant did under the circumstances of this case does not amount to a "refusal" to take the test.

The implied consent statute was enacted to assist in the prosecution of the drinking driver. Chemical analysis of a suspect's blood, breath or urine provides a scientific measure of the amount of alcohol in the blood stream. The effect on a normal person's driving ability varies with the percentage of blood-alcohol. Based on these percentages, the statute provides presumptive guidance for police officers, prosecutors, judges and juries to aid them in carrying out their respective duties in curbing drunk driving. To encourage the suspected drunk driver to take a blood-alcohol test voluntarily, the implied consent statute imposes an automatic revocation penalty, with very few exceptions, on those who refuse to take the test. *Colorado Legislative Council Research Publica-*

*tion* No. 123, *Highway Safety in Colorado,* 37-46 (1966). To give fair notice to the suspect, the statute requires that the suspect must be warned of the probable consequence of a refusal before his license can be revoked. Therefore, this warning should be phrased so that a person of normal intelligence will understand the consequences of his actions. *See Decker v. Dept. of Motor Vehicles,* 6 Cal.3d 903, 101 Cal. Rptr. 387, 495 P.2d 1307; *Plumb v. Dept. of Motor Vehicles,* 1 Cal.App.3d 256, 81 Cal. Rptr. 639.

▪ Here Calvert was given the *Miranda* warnings and he manifested his desire to call his attorney before deciding whether or not to submit to the test. Calvert was not told that he had no such right. Under these circumstances, Calvert should have been advised that the right to remain silent does not include the right to refuse to submit to the test or the right to prior consultation with an attorney. *State v. Murray,* 8 Wash. App. 944, 509 P.2d 1003. Where, as here, law enforcement officers, even though inadvertently, either through an act of omission or commission, cause a suspect's misunderstanding of the state of the law, he cannot be held strictly accountable for his refusal to take implied consent tests. *See Lampman v. Dept. of Motor Vehicles,* 28 Cal.App. 3d 922, 105 Cal. Rptr. 101; *Smith v. Dept. of Motor Vehicles,* 1 Cal.App.3d 499, 81 Cal. Rptr. 800; *Plumb v. Dept. of Motor Vehicles, supra; Maitland v. Chapman,* 276 Cal.App.2d 296, 80 Cal. Rptr. 729; *West v. Dept. of Motor Vehicles,* 275 Cal.App.2d 908, 80 Cal. Rptr. 385; *Walker v. Dept. of Motor Vehicles,* 274 Cal.App.2d 793, 79 Cal. Rptr. 433; *Kauffman v. Motor Vehicles Div., Dept. of Transportation,* 10 Or.App. 582, 500 P.2d 473.

The judgment is reversed.