**STATE v. ROCHE**
TO80-53470
**STATE v. HALL**
TO80-52148
**STATE v. VATALARO**
TO80-57307
(Consolidated)
County Court, Orange County
December 19, 1980

State Attorney's Office, for the plaintiff.

John G. Pierce, for the defendant Arthur F. Roche.

Hugo de Beaubien, for the defendant Jack Ray Hall.

Anne E. Richards, Asst. Public Defender, for the defendant Russell Vatalaro.

JAMES C. HAUSER, County Judge.

---

STATE OFFICIALS SHALL NOT UNREASONABLY PROHIBIT AN ACCUSED FROM CONSULTING WITH HIS ATTORNEY PRIOR TO THE ACCUSED TAKING THE "BREATHALYZER TEST". IF THE ACCUSED, SUBSEQUENTLY, DOES NOT TAKE THE BREATHALYZER TEST, HE HAS NOT "REFUSED" TO TAKE THE BREATHALYZER TEST WITHIN THE MEANING OF FLA. STAT. 322.261 AND HIS LICENSE WILL NOT BE SUSPENDED.

### SYNOPSIS

The above three defendants were all arrested for the offense of driving under the influence of alcohol, at separate times and on separate dates. All were taken to the Municipal Justice Building, where as part of the booking procedure, they were required to breathe into a machine called a breathalyzer.[1]

ISSUE:    SHOULD A CITIZEN BE PREVENTED A REASONABLE TIME PERIOD TO CONSULT WITH HIS ATTORNEY PRIOR TO TAKING THE BREATHALYZER TEST.

DECISION:   NO.

The right to consult with an attorney is a fundamental right protected by the V & XIV Amendments of the United States Constitution and Fla. Stat. 901.24. This Court rules that even though a Defendant is not

---

[1] A breathalyzer measures the amount of alcohol in the bloodstream. This is an effective scientific tool to determine the amount of alcohol an individual has consumed. If an individual has a blood alcohol level equal to or greater than .10%, he is presumed to be "under the influence" pursuant to Fla. Stat. 322.262(c). Every individual who has a driver's license in Florida consents to the taking of this breathalyzer test. (Fla. Stat. 322.261(1)(a)).

entitled to have an attorney *appointed* prior to taking the breathalyzer test, he should not be prohibited from *consulting* with an attorney prior to taking the breathalyzer test. This consultation must be completed within a reasonable time after the accused's arrest.

Since these cases will have far reaching ramifications, this Court has seen fit to thoroughly research the law in this area on which it has based its decision. First, of course, it is necessary to have a thorough understanding of the facts in each case.

## A. FACTS IN STATE v. ROCHE

The accused was arrested on August 21, 1980 for the alleged offense of driving under the influence of alcohol. After the accused was arrested, the police officer read him his Miranda warnings, which include the following paragraphs:

> "3. You are entitled to talk to an attorney now and have him present now or at any time during questioning.
>
> 4. If you cannot afford an attorney, one will be appointed for you without cost.
>
> 5. Do you desire to consult with an attorney first or have one present during this interview? Yes _____ No _____
>
> 6. If, at any time hereafter, you wish to remain silent or have an attorney present, all questioning will be stopped."

After having been read his Miranda warnings, the accused immediately asked to consult with his attorney. This request was denied, as being against official police policy. The officer informed the Defendant that he could only consult with his attorney after the Defendant had been booked, and *after* he took the breathalyzer test.

The Defendant was then transported to the Municipal Justice Building where the booking procedures take place and the breathalyzer unit is located. The accused was asked if he would take the breathalyzer test. The accused stated that before he would make this crucial decision, he would like a reasonable time period to telephone his attorney. This request was refused. The police officer stated it was against official police policy to allow an accused to consult with his attorney until after he took the breathalyzer test. As a result, Mr. Roche did not take the breathalyzer test.

When the Defendant was arrested, he was told he had the right to talk to an attorney, yet he was later told he could not talk to an attorney

until *after* he took the breathalyzer test. He was never given any explanation as to why he was prohibited from consulting with an attorney. As a result, this Court makes a finding of fact that Mr. Roche was "confused" as to whether he could or could not consult with an attorney.

This Court also makes the following findings of fact, which it finds significant:

1. The Defendant *never* had been arrested previously.

2. The Defendant had never previously been booked in any police station.

3. The Defendant was unusually dependent upon his attorney in that because of the nature of his business, he would consult with his attorney two or three times a week. The Defendant stated that he would never make a "move" without first consulting his attorney.

4. The Defendant was afraid, tense and nervous and wanted his attorney to explain what legal consequences would take place if he did or did not take the breathalyzer test.

## B. FACTS IN STATE v. HALL

The facts in *State v. Hall* are similar to those in *Roche*. The defendant was read his Miranda warnings prior to his being asked to take the breathalyzer test. Mr. Hall requested that he be permitted to consult with an attorney prior to deciding whether or not to take the test. This request was refused. Mr. Hall did not take the test.

At Mr. Hall's hearing, it was established that it was standard police policy to prohibit an individual who has been arrested to consult with anyone for four (4) hours. An individual is placed in a "drunk tank", presumably to sober up. In Mr. Hall's case, he was prohibited from making any telephone calls from the time he was arrested at 2:00 A.M. until 8:00 A.M.

## C. FACTS IN STATE v. VATALARO

In this case, unlike *Hall* or *Roche,* the accused was never given his Miranda warnings. Thus, he was never told he had a "right to an attorney".[2] The accused testified he understood what the consequences would be if he refused to take the breathalyzer test. Nevertheless, he

---

[2]See paragraph 3 of the Miranda warnings located at page 173.

asked approximately 60 times to talk to an attorney before he had to make that decision. This request was refused.

The Defendant in this case is 25 years of age. He testified at his hearing that he was terrified during the entire booking procedure. He testified that he had been taught that whenever you get in "trouble", you should consult with an attorney as quickly as possible. The Court notes that the Defendant had never been previously arrested for the offense of driving under the influence of alcohol, although he had been arrested previously on another charge. Also, at Mr. Vatalaro's hearing, the officer who arrested him candidly admitted that had the Defendant been permitted 10 minutes to make a telephone call to an attorney, this would not in any way have caused a problem for the police.

### D. GENERAL FACTS ABOUT THE BREATHALYZER TEST AND BOOKING PROCEDURE WHEN A DEFENDANT IS ARRESTED FOR THE OFFENSE OF DRIVING UNDER THE INFLUENCE OF ALCOHOL.

During the hearings in these cases, the Court was fortunate to hear testimony from two employees of the Orange County Sheriff's Department who have worked extensively with the breathalyzer unit, Mr. Steven Ersch and Deputy Harry Parks. Their candid answers to the questions posed by this Court have proven enormously beneficial.

Their testimony was that after an individual is arrested for the offense of D.U.I.,[3] the individual is normally taken to the Municipal Justice Building. Once the defendant is inside the building, he is immediately taken to the breathalyzer room. The breathalyzer room is a totally separate room from the general booking room. Once inside, the following happens:

1. Prior to taking the breathalyzer test, the accused is watched by the breathalyzer technician for a period of twenty minutes.

2. During this twenty minute period, the individual is not permitted to drink, smoke or eat, since to do so would affect the results of the breathalyzer test.

3. During this twenty minute period, forms are filled out by the breathalyzer technician with help from the accused.

4. Once the twenty minute time period has expired, the accused is given his Implied Consent warnings pursuant to Fla. Stat. 322.261. He is told that:

---

[3]Driving Under the Influence of Alcohol.

a) He is required to submit to an approved chemical test to determine the alcohol content of his blood.

b) The accused may refuse to submit to such test; but,

c) Upon such refusal, his license will be suspended for three (3) months.

5. If the defendant does refuse to take the breathalyzer, he is entitled to have a hearing before a Judge who will determine whether the license should be suspended.

6. There is an express police policy prohibiting a defendant from consulting with an attorney prior to the defendant taking the breathalyzer test.

The breathalyzer technicians testified that alcohol dissipates from the human body at the relatively slow rate of .015% per hour. For example, if an individual has a blood alcohol reading of .18% at 9:00 P.M., the blood alcohol reading will be .15% at 11:00 P.M. Under both circumstances, this would be considered prima facie proof that the accused was driving under the influence. See, Fla. Stat. 322.262(c).

When questioned, both technicians admitted that permitting the Defendant 30 minutes to contact his attorney by telephone prior to the taking of the breathalyzer test would not significantly alter the results of the breathalyzer test. Neither saw any significant reason why the accused should not be permitted to consult with his attorney. The problems they did foresee could be easily overcome.

I. IT IS A FUNDAMENTAL DENIAL OF V AMENDMENT DUE PROCESS OF LAW TO PROHIBIT A DEFENDANT FROM CALLING HIS ATTORNEY PRIOR TO TAKING THE BREATHALYZER TEST.

The United States Supreme Court, in determining what constitutes a violation of V Amendment due process, has fashioned the "fundamental fairness" test. Essentially, one must look to the police policy to determine if it is fundamentally fair.

Justice Powell recently explained the test to be employed when he stated in *Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 42 L.Ed. 2d 521 (1975), the following:

"Identification of the precise dictates of due process requires consideration of both the governmental function involved and the private interests affected by official action."

Thus, in determining whether an accused should be permitted to consult with an attorney before he takes the breathalyzer, this Court must weigh the burden to the State to permit the telephone call against the accused's V Amendment right to consult with his counsel.

## A. BURDEN ON THE STATE—THE NEED FOR THE BREATHALYZER.

Fla. Stat. 322.261 states as follows:

"322.261 Suspension of license; chemical test for intoxication.—

(1)(a) Any person who shall accept the privilege extended by the laws of this state of operating a motor vehicle within this state shall by so operating such vehicle be deemed to have given his consent to submit to an approved chemical test of his breath for the purpose of determining the alcoholic content of his blood if he is lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of alcoholic beverages. The test shall be incidental to a lawful arrest and administered at the request of a peace officer having reasonable cause to believe such person was driving a motor vehicle within this state while under the influence of alcoholic beverages. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of 3 months."

Pursuant to this statue, any individual who drives on Florida's highways consents to take the breathalyzer test if there is probable cause to believe he is under the influence of alcohol. The policy of requiring individuals to take the breathalyzer test is a sound one. An abnormally high percentage of the serious accidents caused in Florida are caused by drivers under the influence of alcohol. It is sound public policy to keep intoxicated individuals from driving on Florida's highways.

If an individual refuses to take the breathalyzer, his license will automatically be suspended for three months Fla. Stat. 322.261(1)(d). Again, this is sound public policy, since any individual accused of DUI should not be permitted to evade the consequences of what the breathalyzer test may reveal.

In order to determine whether an individual's license is to be suspended for three months, the Defendant is entitled to an administrative hearing, called an Implied Consent Hearing. At this hearing, the hearing officer must determine:

1) Whether the arresting officer had reasonable cause to believe the person had been driving under the influence of alcohol.

2) Whether the person had been placed under lawful arrest.

3) Whether the person refused to submit to the test after being requested by a police officer.

4) Whether he had been told that his privilege to drive would be suspended for three months if he refused to submit to this test.

The State's greatest burden is that if an accused were permitted to consult with an attorney, this would delay in the testing, which would affect the outcome of the breathalyzer test. This fear was expressed in *State v. Pandoli,* 262 A2d 41 (N.J. 1970) at page 42.

". . . the request for consultation with counsel necessarily involved a delay in administration of the test. Having in mind the remedial purpose of the statute and the *rapidity with which the passage of time and the physiological process tend to eliminate evidence of ingested alcohol* in the system, it is sensible to construe the statute to mean that anything substantially short of an unqualified, unequivocal assent to the officers request that the arrested motorist take the test constitutes a refusal to do so."
(emphasis added)

However, the factual basis for the *Pandoli* decision is wrong. As has been pointed out previously, alcohol does not dissipate rapidly, it dissipates *slowly,* at the rate of only .015% per hour. The Sheriff's employees readily admitted that a 30 minute delay would not substantially affect the results since the amount of dissipation would only be .0075%. If an individual had a blood alcohol content of .1675%, ½ hour later his blood alcohol content would still be .16%. Under both cases, there would be a statutory prima facie case against the accused of driving under the influence.

## B. INDIVIDUAL RIGHTS INFRINGED UPON—THE V AMENDMENT RIGHT TO CONSULT WITH COUNSEL

Few rights are as fundamentally protected as the right of an individual to consult with an attorney of his own choosing and at his own expense. This right, protected by the V Amendment due process clause applies to civil, criminal and administrative cases. It is based on the sound legal principle that an attorney trained in the law is best able to represent the legal position of one who is not so trained. Thus, an individual is

permitted to consult with an attorney about legal problems concerning, taxes, personal injury, contracts, labor law, etc., even though he does not have the constitutional right to have the State "appoint" an attorney for him. The right to have an appointed attorney is based on the VI Amendment and is limited to criminal cases. The decision on whether or not to take the breathalyzer test is administrative in nature, not criminal.[4]

Under the V Amendment due process clause, there are virtually no decisions which prohibit an individual from "consulting" with his attorney, be it criminal, civil or administrative law. The United States Supreme Court did rule that a grand jury witness was not permitted to have his attorney present *in* the grand jury during grand jury proceedings. *In re Groban's Petition,* 352 U.S. 330; 1 L.Ed.2d 376, 77 S.Ct. 510 (1957). Nevertheless, numerous courts have permitted a grand jury witness to "consult" with his attorney, who is *outside* the grand jury room, after each question. *United States v. DeSapio,* 299 F. Supp. 436 (USDC S.D. N.Y. 1969); *U.S. v. Corallo,* 413 F.2d 1306 (2 Cir. 1969); *U.S. v. George,* 444 F.2d 310 (6th 1971). If one is permitted to "consult" with an attorney during a grand jury proceeding, one would be hard pressed to deny the right of consultation prior to a defendant taking the breathalyzer test.

In *State v. Neitzel,* 289 N.W. 2d 828 (Wisc. 1980), the Wisconsin Supreme Court argued that since an accused was legally required to take the breathalyzer, no valid purpose would be served to permit an accused to talk to his attorney. The Supreme Court of Minnesota answered this question in *Prideaux v. Minnesota,* 247 N.W. 2d 385 (Minn. 1976) at p. 390:

> "Even in the vast majority of cases in which competent counsel would advise his client to take the test, the valuable right to counsel is not wasted. An arrested driver may be confused, dazed, and suspicious of the arresting officer, not only because of the possible influence of alcohol, but perhaps because of injury due to accident, and other reasons. Where the important chemical-testing procedures are not unreasonably delayed or impaired, the driver should have the benefit of the knowledgeable advice of his own counsel; who may assure him that the officer's statements about his rights and obligations are correct. The recognition of such a right will encourage

---

[4]A full discussion comparing V Amendment right to "consult" with counsel versus VI Amendment right to have counsel "appointed" is discussed at page 184-187.

compliance with the chemical-testing procedures in an atmosphere of fundamental fairness.''

Secondly, the Wisconsin Supreme Court misses the point about the V Amendment constitutional right to consult with counsel. The Court is unaware of any requirement that an individual must have a valid reason before he is permitted to talk with his attorney. In fact, such a position is virtually legally indefensible.[5]

A number of courts, in balancing the burden to the State versus the constitutional right of an individual to consult with counsel, have ruled on behalf of the individual.

In *Hall v. State,* 231 N.W. 2d 396 (C. CA Div.2 Mich. 1975), the Court stated at p. 399:

> ''In weighing the individual interest against the government interest, it is suggested that . . . the government interest is best served by allowing a suspect a phone call to his attorney. A caveat: We are not suggesting a constitutional right to counsel—we are suggesting a reasonable due process approach to a certain set of circumstances.''

In *People v. Gursey,* 239 NE 2d 351 (N.Y. 1968), Judge Breitel in speaking for a unanimous court, stated at p. 353 that fundamental fairness dictated that a defendant be given a reasonable time to consult with an attorney.

> ''The privilege of consulting with counsel concerning the exercise of legal rights, should not, however, extend so far as to palpably impair or nullify the statutory procedure requiring drivers to choose between taking the test or losing their licenses. It is common knowledge that the human body dissipates alcohol rapidly and, indeed, under subdivision 3 of section 1192 of the Vehicle and Traffic Law, test results are admissible

---

[5]The absurdity of *Neitzel's* logic may best be illustrated by analogy. Suppose X purchases a used car from Dealer Y. X signs a contract with Y, which states in small print that X is responsible for all repairs. 2 hours after X purchases the car, the engine falls out. X takes the car back to Y and demands Y pay for the repairs. Y shows X the contract and tells X that X, not Y, is responsible. X, not believing Y, seeks to take his contract to his attorney. Under *Neitzel,* he would be prohibited from doing so, since X would legally be required to make the repairs. However, X will surely not believe he is liable until he has talked to his attorney, since he is not about to believe Y. What is at stake in this case is the simple proposition that an individual should never be prohibited from consulting with his attorney, absent compelling circumstances shown by the State.

in evidence only if the test had been taken within two hours of the time of arrest. Where the defendant wishes only to telephone his lawyer or consult with a lawyer present in the station house or immediately available there, no danger of delay is posed. But, to be sure, there can be no recognition of an absolute right to refuse to test until a lawyer reaches the scene (see Matter of *Finocchario v. Kelly,* 11 N.Y. 2d 58, 61, 226 N.Y.2d 403, 405, 181, N.E.2d 427, 429 (VAN HORRIS, J., concurring)). If the lawyer is not physically present and cannot be reached promptly by telephone or otherwise, the defendant may be required to elect between taking the test and submitting to revocation of his license, without the aid of counsel.''

The consequences of not permitting an accused to talk to an attorney are grave. If he takes the test, he may be found guilty of DUI; if he does not take the test, he will lose his license for 90 days. One can think of few occasions where the need to talk to an attorney is greater.

One must also realize that although a driver's license is a privilege, not a right, *Smith v. City of Gainesville,* 93 So.2d 105 (Fla. 1957), the loss of a driver's license will have serious consequences. The Supreme Court has stated in *Bell v. Burson,* 402 U.S. 535; 91 S.Ct. 1586, 29 L.Ed. 2d 90 (1971) at p. 539:

"Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of their livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licenses. In such cases the licenses are not to be taken away without that procedural due process required by the XIV Amendment.''

The devastating consequences of a driver's license revocation was best expressed in *Prideaux* at p. 389:

"Revocation of a driver's license for 6 months may have an impact on the ordinary driver at least as devastating as the traditional criminal sanctions of a fine or imprisonment. A driver's license is no longer a luxury or mere privilege to most citizens, but a prerequisite to earning a livelihood.''

C.   DECISION BASED ON V AMENDMENT DUE PROCESS

In weighing the burden to the State of Florida versus the individual's constitutional right to consult counsel, this Court rules that the police may not prohibit an individual a reasonable time to consult with his

attorney prior to the defendant deciding whether or not he will take the breathalyzer test. A further explanation as to how this procedure shall work, will be discussed in the Summary at p. 20-21.

II. AN ACCUSED HAS THE RIGHT TO CONSULT WITH AN ATTORNEY PRIOR TO TAKING THE BREATHALYZER TEST PURSUANT TO FLA. STAT. 901.24.

Fla. Stat. 901.24
"A person arrested shall be allowed to consult with any attorney entitled to practice in this state, alone and in private at the place of custody, as often and for such periods of time as is reasonable."

Fla. Stat. 322.261 (Implied Consent)
"322.261 Suspension of license; chemical test for intoxication—
(1)(a) Any person who shall accept the privilege extended by the laws of this state of operating a motor vehicle within this state shall by so operating such vehicle be deemed to have given his consent to submit to an approved chemical test of his breath for the purpose of determining the alcoholic content of his blood if he is lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of alcoholic beverages. This test shall be incidental to a lawful arrest and administered at the request of a peace officer having reasonable cause to believe such person was driving a motor vehicle within this state while under the influence of alcoholic beverages. Such person shall be told that his failure to submit to such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of 3 months."

It is a Judge's duty to construe statutes in harmony with one another. *Mann v. Goodyear Tire,* 300 So.2d 666 (Fla. 1974): *In the Interest of N,* 279 So.2d 50 (Fla. 4th DCA 1973). Fla. Stat. 901.24 requires a person arrested to be entitled to consult with an attorney as many times as are reasonable. Nowhere in Fla. Stat. 322.261 is the accused prohibited from consulting with an attorney. Since there is no conflict between these statutes, a proper statutory construction would be to allow a defendant to consult with his attorney prior to the defendant deciding whether or not to take the breathalyzer test.[6]

---

[6]One state, Utah, has statutorily prohibited an individual from consulting with an attorney prior to taking the breathalyzer test. See Utah Statute 41-6-44 10(g).

Secondly, numerous states which have statutes similar to Florida's Implied Consent statute and Florida's right to consult with counsel, Fla. Stat. 901.24, have permitted an accused to call an attorney prior to taking a breathalyzer. *State v. Vietor,* 261 NW 2d 828 (Iowa 1978); *Fuller v. State,* 275 NW 2d 410 (Iowa 1979); *Prideaux v. Minnesota, supra; Hall v. State, supra; Gooch v. Spralding,* 523 SW 2d 861 (Mo. 1975); *Dayton v. Nugent,* 265 NE 2d 826 (Ohio Municipal 1970); but see, *State v. Neitzel,* 289 NW 2d 828 (Wisc. 1980) which held that an accused is not entitled to call an attorney.

In *Vietor, supra,* the Iowa Supreme Court properly balanced the accused's statutory right to consult with an attorney with the necessity that the breathalyzer be administered within a reasonable time when it stated at p. 831:

> "As *Prideaux* and *Gursey* both point out, this right to counsel is not absolute. It must be balanced against the practical consideration that a chemical test is to be administered within two hours of the time of arrest or not at all. See §321B.3."

> "An arrested person should not be allowed to sabotage the purpose of Chapter 321B by delay. His right to consult a lawyer must be exercised within a period which will still permit a test to be taken. If counsel is not available within that time, the right is lost."

No Florida court has directly addressed the impact of Fla. Stat. 901.24 on the Implied Consent statute. In *State v. Oliver,* 47 Fla. Supp. 111 (Palm Beach County Court), a *county* court did rely on Fla. Stat. 901.24 as authority for permitting an accused to telephone his attorney prior to deciding whether to take the breathalyzer test. However, this case was reversed by the circuit court. See, *State v. Oliver,* 47 Fla. Supp. 113 (Palm Beach Circuit Court 1977). The Circuit Court did not discuss, much less explain, why Fla. Stat. 901.24 was not applicable. The entire decision was based on the VI Amendment right to have counsel appointed, which will be discussed at III. of this Order.

One state, North Carolina, has intelligently solved this entire problem by specifically requiring that police officers inform an accused that prior to taking the breathalyzer they have the right to telephone an attorney, see, N.C. State statute J.S. 20-16.2(a)(4), which provides in pertinent part:

> "(The accused) has the right to call an attorney and select a witness to view for him the testing procedures; but that the

test shall not be delayed for this purpose for a period in excess of 30 minutes from the time he is notified of his rights.''
(Emphasis added.)

The Florida legislature would do well to consider adopting such a statute.

## III. OTHER COURTS WHICH HAVE DENIED DEFENDANTS THE RIGHT TO CONSULT WITH COUNSEL HAVE BASED THEIR DECISION ON THE VI AMENDMENT, NOT V AMENDMENT.

Numerous other states have implied consent statutes similar to Florida. Most courts have held that the defendant is not entitled to consult with counsel prior to taking the breathalyzer test. See, *Campbell v. Superior Court,* 479 P.2d 685 (Arix. 1971); *Goodman v. Orr,* 19 Cal.App.3d 845, 97 Cal.Rptr. 226 (1971); *Finley v. Orr,* 262 Cl.App.2d 656, 69 Cal.Reptr. 137 (1968); *Calvert v. State, Dept. of Revenue,* 519 P.2d 341 (Colo. 1974); *Davis v. Pope,* 197 S.E. 2d 861 (Ga. 1973); *Mills v. Bridges,* 471 P.2d 66 (Idaho 1970); *Harrison v. State, Dept. of Public Safety,* 298 So.2d 312 (La. App. 1974); *Whitaker v. State, Dept. of Public Safety,* 264 So.2d 725 (La. App. 1972); *State v. Severino,* 537 P.2d 1187 (Hawaii 1975); *Lewis v. Nebraska State Dept. of Motor Vehicles,* 217 N.W. 2d 177 (Neb. 1974); *Rusho v. Johns,* 181 N.W. 2d 448 (Neb. 1970); *Harlan v. State,* 308 A.2d 356 (H.H. 1973); *State v. Pandoli,* 262 A.2d 41 (N.J. 1970); *Story v. Hults,* 19 N.Y. 2d 936, 281 N.Y. S.2d 342, 228 N.E. 2d 398 (1967); *Finocchairo v. Kelly,* 11 N.Y. 2d 58, 226 N.Y. S.2d 403, 181 N.E. 2d 427, certiorari denied, 370 U.S. 912, 82 S.Ct. 1259, 8 L.Ed.2d 405 (1962); *Agnew v. Hjelle,* 216 N.W. 2d 291 (N.D. 1974); *Phares v. Dept. of Public Safety,* 507 P.2d 1225 (Okl. 1973); *Robertson v. State,* etc., 501 P.2d 1099 (Okl. 1972); *Stratikos v. Dept. of Motor Vehicles,* 477 P.2d 237 (Ore. 1970), petition for rehearing denied, 478 P.2d 654 (1971); *Commonwealth v. Morris,* 347 280 A.2d 658 (Pa. 1971); *Blow v. Commr. of Moto. Vehicles,* 164 N.W. 2d 351 (S.D. 1969); *State v. Dellveneri,* 258 A.2d 83 (Vt. 1969); *Deaner v. Commonwealth,* 170 S.E. 2d 199 (Va. 1969); and *State v. Oliver,* 47 Fla. Supp. 113 (Fla. Palm Beach 1977).

These cases are premised on the fact that the defendant does not have a VI Amendment ''absolute right'' to counsel. One must understand that there is a substantial difference between the VI Amendment ''absolute right'' to counsel and the V Amendment ''right to consult'' counsel.

The VI Amendment applies to all *criminal* cases. Essentially, that constitutional right makes *mandatory* that all accused of committing a criminal offense have counsel. Since the consequences of being found guilty may be imprisonment, the United States Supreme Court has on numerous occasions required that an individual who is indigent be appointed counsel, *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55 77 L.Ed. 158 (1932); *Gideon v. Wainright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed. 2d 799 (1963); *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006; 32 L.Ed. 2d 530 (1972).

The VI Amendment does not apply to administrative proceedings. Those cases that prohibit an accused from consulting with an attorney have based their decision on the fact that an implied consent hearing is administrative, not criminal, in nature. Hence, the theory that there is no VI Amendment "absolute" right to counsel is correct. However, none of these cases adequately address the fact that the breathalyzer is also used in criminal prosecutions. In *Prideaux v. Minnesota, supra,* the Minnesota Supreme Court recognized this problem when it stated at p. 388:

> "While driver's license revocation proceedings have been labeled 'civil' in nature, ostensibly because they are conducted by the commission of public safety in administrative proceedings and reviewed in the courts as such, we do not view the 'civil' label as dispositive in view of the important constitutional rights which may be involved. First driver's license revocation for failure to submit to chemical testing is necessarily and inextricably intertwined with an undeniably criminal proceeding— namely . . . DUI."

Nor, do these cases explain the difference between VI Amendment absolute right to counsel and V Amendment right to counsel. In *Gagnon v. Scarpelli,* 411 U.S. 778, 36 L.Ed. 2d 656, 93 S.Ct. 1756 (1973), the United States Supreme Court ruled that even though a parole revocation hearing was not criminal, but administrative in nature, that, nevertheless, in some circumstances, an attorney should be appointed to represent the defendant. This appointment would be under the V not VI Amendment.

Florida, too, has recognized the distinction between a VI Amendment "absolute" right to counsel and a V Amendment right to consult counsel. In *State v. Weeks,* 166 So.2d 892 (Fla. 1964), the Court ruled that there was no VI Amendment absolute right to have counsel appointed for appeals, but that there was a V Amendment due process right to

have counsel appointed on meritorious appeals. The Florida Supreme Court stated at p. 896:

> "This means that in these collatoral proceedings there is no absolute right to assistance of a lawyer. Nevertheless, *Fifth Amendment due process* would require such assistance if the post conviction motion presents apparently substantial meritorious claims for relief . . ."
> (emphasis added)

*Weeks* is cited for the sole proposition that the right to counsel is not simply limited to the VI Amendment, but is applicable to the V Amendment as well.

*In the interest of D.B.,* 385 So.2d 83 (Fla. 1980), the Florida Supreme court recently ruled that in child dependency cases, the appointment of counsel would flow from the V Amendment due process clause. The Court stated at p. 90 and 91:

> "We agree in part with the *Davis* court and the trial judge that counsel is necessarily required under the due process clause of the United States and Florida Constitutions, in proceedings involving the permanent termination of parental rights to a child, or when the proceedings, because of their nature, may lead to criminal child abuse charges. It is our view that under the *Cleaver* test, counsel will always be required where permanent termination of custody might result, but where there is no threat of permanent termination of parental custody, the test should be applied on a case-by-case basis."

The Florida Supreme Court went on to rule that counsel need not be provided in every case. Yet even where counsel was not provided by the State, nevertheless a court should make every effort to make sure a parent would be represented. Certainly, a parent would not be prohibited counsel. The Court stated at p.91:

> "Where the trial judge finds no constitutional right to counsel under *Cleaver,* he may nonetheless use his historical authority to provide legal assistance. Further, certain *due process requirements* must be observed even though counsel is *not constitutionally required.* All parents must be given notice of a dependency hearing, advised that they have a right to be represented by counsel of their choice, and afforded a *period of time to obtain counsel which is reasonable under the circumstances."* (emphasis added)

In summary, the V Amendment permits the defendant to consult with his attorney, but does not require that the police inform the accused he is entitled to an attorney as would the VI Amendment. This balance was best expressed in *State v. Vietor,* 261 N.W. 2d 828 (Iowa 1978) when the court states at p. 831:

> "In the present case, we agree with Defendant judge that the statute did not require the officer to tell Irvin he had a right to counsel. It simply forbade telling him he did *not* have such a right."

IV.  IN ROCHE & HALL, THIS COURT FINDS THAT THEIR "REFUSAL" WAS BASED ON "CONFUSION" CAUSED BY THE POLICE AND, THEREFORE, WAS PERMISSIBLE.

As was stated in the Findings of Fact, both Mr. Hall and Mr. Roche were given Miranda warnings before they were asked to take the breathalyzer test. One of the Miranda warnings is that an accused has a "right to counsel" based on the VI Amendment. They were told prior to taking the breathalyzer test that they were not entitled to an attorney. Since whether a Defendant is entitled "to consult with an attorney" prior to taking the breathalyzer is extremely complex, many courts have ruled that if an accused is "confused" as to his rights to an attorney, any refusal to take the breathalyzer is invalid. See, California *Rust v. Dept. of Motor Vehicles,* 73 Cal. Reptr. 366 (C.A. 4th Dist. Div. 1 1969); Nebraska *Wiseman v. Sullivan,* 211 N.W. 2d 906 (Neb. 1973); Hawaii *State v. Serevino,* 537 P.2d 1187 (Hawaii 1975); Louisiana *Swan v. Dept. of Public Safety,* 311 So.2d 498 (La. 1975); Utah *Hunter v. Dorius,* 458 P.2d 877 (Utah 1969); Colorado *Calvert v. State Dept. of Revenue,* 519 P.2d 341 (Colo. 1974). See also, *Florida v. Duke,* 378 So.2d 96 (Fla. 2d DCA 1979).

To expect someone to adequately explain to an individual why he is not entitled to an attorney prior to the breathalyzer test after he has already been told he is entitled to an attorney for the criminal offense is too much to ask a law professor, let alone a policeman at 3:00 A.M. in the morning. The revocation of the driver's license, based on taking the breathalyzer, is so inextricably intertwined with the criminal offense of DUI, that it is almost indistinguishable. Instead of playing mental gymnastics as to whether the accused was or was not "confused", it makes infinite more sense to allow the accused to call his attorney.

## SUMMARY

In summary, this Court rules that in addition to reading the defendant his Implied Consent rights:

1. The police need not inform an accused prior to taking the breathalyzer that he has the right to call an attorney.

2. If, however, the accused asks to talk to an attorney, the police should not prohibit him from doing so.

3. The police should allow the accused a reasonable time to contact and consult an attorney, say 30 minutes, but the time period should be flexible to fit each particular case.

4. The accused shall be permitted to contact his attorney by telephone and the police shall use reasonable efforts to assist him in this endeavor.

5. The accused should be informed that if he fails to contact his attorney within a reasonable time, he will have to decide to take the test without benefit of consulting with counsel.

6. If the accused still refuses to take the test, he shall be deemed to have refused to take the breathalyzer and his license will be suspended for 90 days.

7. If the Defendant is not permitted to take the test because he was refused the opportunity to call an attorney, he will have been deemed not to have refused for the purposes of Fla. Stat. 322.261 and his license will *not* be suspended.

Since the above named Defendants asked to consult with an attorney prior to taking the breathalyzer, but were prohibited from doing so, this Court rules that they did not "refuse" for purposes of Fla. Stat. 322.261.

It is, therefore, ORDERED AND ADJUDGED that the Defendants', ARTHUR FELIX ROCHE, JACK RAY HALL and RUSSELL VATALARO, licenses shall not be suspended.