674 P.2d 359 (1984)
Hugh Hess DRAKE, Petitioner-Appellant,
v.
The COLORADO DEPARTMENT OF REVENUE, MOTOR VEHICLE DIVISION, and Alan Charnes, in his capacity as duly appointed Executive Director of the Colorado Department of Revenue, Respondents-Appellees.
No. 82SA390.
Supreme Court of Colorado, En Banc.
January 9, 1984.
Rehearing Denied January 23, 1984.
*360 Houtchens, Houtchens & Daniel, Kim R. Houtchens, Greeley, for petitioner-appellant.
J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., J. Stephen Phillips, Roger Morris, Asst. Attys. Gen., Denver, Stuart A. Van Meveren, Dist. Atty., Eighth Judicial Dist., Frank H. Oldham, Deputy Dist. Atty., Fort Collins, for respondents-appellees.
ERICKSON, Chief Justice.
Hugh Hess Drake (appellant) appeals a judgment of the District Court of Larimer County which affirmed the revocation of his driver's license by a Department of Revenue hearing officer under section 42-4-1202(3)(e), C.R.S.1973 (1982 Supp.) (Implied Consent Law).[1] We affirm.

I.
On June 5, 1981, at approximately 11:05 p.m., Officer Motzkus of the Colorado State Patrol, driving northbound on Colorado 287 in Larimer County, Colorado, observed appellant weaving back and forth across the central line and shoulder lines of the highway. Officer Motzkus stopped appellant and requested that he perform several roadside sobriety tests.[2] Appellant performed poorly on the tests, and Officer Motzkus arrested him for driving under the influence of alcohol.
Officer Motzkus then requested that appellant sit in the right front seat of the patrol car. The officer then handed him a copy of the implied consent form, and read the entire consent form out loud to him. Immediately thereafter, Officer Motzkus verbally requested appellant to submit to a chemical test of his blood, breath, or urine for the purpose of determining the alcohol content of his blood. Appellant responded: "I'm not taking any test until I talk to my lawyer. The law is no good." Officer Motzkus then repeated his request that appellant submit to a chemical test. Appellant again declined stating that he wished first to consult with his attorney. This same scenario was repeated a third time. Officer Motzkus told appellant that he did not have the right to consult with an attorney before deciding whether or not to submit to the test.[3] Officer Motzkus did not administer a chemical test on the appellant.
On November 24, 1981, the Colorado Department of Revenue held a hearing pursuant to the Colorado Implied Consent Statute, section 42-4-1202(3)(e), C.R.S.1973 (1982 Supp.), and determined that: (1) Officer Motzkus had reasonable grounds to believe that appellant was operating his motor vehicle while under the influence of alcohol; (2) a proper advisement was given to appellant; *361 (3) and the appellant had refused to submit to the chemical test. The appellant's driver's license was revoked by the hearing officer for three months. The hearing officer's revocation of appellant's driving privileges was affirmed by the District Court of Larimer County on April 14, 1982.

II.

A.
Appellant contends that his request to consult with an attorney did not constitute a refusal within the meaning of section 42-4-1202(3)(e), because the officer at no time indicated to appellant that the request would be deemed a refusal. We disagree.
In deciding whether there was a refusal to submit to a chemical test, a hearing officer should consider the driver's words and manifestations of willingness or unwillingness to take the test. Dolan v. Rust, 195 Colo. 173, 576 P.2d 560 (1978). In Dolan v. Rust, 195 Colo. at 175, 576 P.2d at 561, we adopted the test set forth by the Supreme Court of Ohio in Hoban v. Rice, 25 Ohio St.2d 111, 267 N.E.2d 311 (1971): "The subjective state of mind of the licensee cannot control the outcome of the proceedings, and a police officer is not required to know the state of mind of the person arrested and determine whether such person understood he was refusing to submit to the test." We held that it is the "driver's external manifestations of unwillingness or his outright refusal to take the test which are relevant, and not the driver's state of mind or his later recollection of events." Dolan v. Rust, 195 Colo. at 175, 576 P.2d at 562.
A motorist has no right under the Colorado Implied Consent Law to confer with counsel prior to deciding whether to consent to a chemical test. Calvert v. State Department of Revenue Motor Vehicle Division, 184 Colo. 214, 519 P.2d 341 (1974);[4]Zahtila v. Motor Vehicle Division, Department of Revenue, 39 Colo.App. 8, 560 P.2d 847 (1977). Generally, when a suspect does not submit to the test because he wants to talk to his attorney before deciding whether to take the test, it is deemed a refusal as a matter of law. Calvert v. State Department of Revenue Motor Vehicle Division, supra.
In this case, appellant was properly advised pursuant to the Colorado Implied Consent Law. He was cautioned repeatedly that he had no right under the Implied Consent Law to consult with an attorney before deciding to submit to or refuse a chemical test.[5]Colgan v. State Department of Revenue, 623 P.2d 871 (Colo.1981). Appellant's response to the officer's requests that he submit to the test evidences an unwillingness on his part to take the test. Dolan v. Rust, supra.[6] We therefore affirm the hearing officer's finding that *362 appellant's statements and conduct manifested a refusal to submit to the chemical test within the meaning of section 42-4-1202(3)(e).

B.
Appellant also asserts that his federal and state constitutional rights to effective counsel and due process of law were violated because he was refused the right to consult with his attorney prior to deciding whether to submit to the chemical test. We disagree because of Calvert v. State Department of Revenue Motor Vehicle Division, supra.
Appellant asks that we now reconsider our holding in Calvert, supra, and fashion a rule granting to motorists the right to consult with an attorney prior to deciding whether to take the chemical test. We decline to do so.

C.
Appellant also claims that under the Implied Consent Law a person refusing to submit to a chemical test is subject to a mandatory revocation without any opportunity for a probationary license, while a person actually convicted of driving under the influence is subject to a mandatory revocation but nonetheless may apply for a probationary license under section 42-2-122(4), C.R.S.1973 (1982 Supp.). In appellant's view, this disparity in treatment violates equal protection of the laws because it is arbitrary and unrelated to any legitimate governmental interest. U.S. Const. amend. XIV.; Colo. Const. art. II, sec. 25.
This precise constitutional argument was rejected by this court in DeScala v. Motor Vehicle Division Department of Revenue, 667 P.2d 1360 (Colo.1983).[7]

D.
Appellant's final contention is that the officer's report to the Division of Motor Vehicle was not properly sworn to within the meaning of section 42-4-1202(3)(e) and that the hearing officer acted in excess of his statutory jurisdiction by not dismissing the implied consent proceeding. In appellant's view, the affidavit does not constitute a "sworn report" within the meaning of section 42-4-1202(3)(b) because the officer admitted, at the hearing, that he did not "remember what oath was administered and the wording used by the notary public." We disagree.
Section 42-4-1202(3)(e), C.R.S.1973 (1982 Supp.), provides in part:
"The department, upon the receipt of a sworn report of the law enforcement officer that he had reasonable grounds to believe the arrested person had been driving a motor vehicle while under the influence of, or impaired by, alcohol and that the person had refused to submit to the test upon the request of the law enforcement officer, shall, as soon as possible, serve notice upon said person, in the manner provided in section 42-2-117, to appear before the department and show cause why his license to operate a motor vehicle or, if said person is a nonresident, his privilege to operate a motor vehicle within this state should not be revoked. . . ."
(Emphasis added.) The statute does not set forth what is meant by the phrase "sworn report." In this case, the Department of Revenue received Officer Motzkus' notarized affidavit which described the officer's action the night of June 5, 1981. In addition, at the administrative hearing, Officer Motzkus testified that he swore to the truth of the information in the affidavit before the notary public. In our view, the evidence is sufficient to support the administrative hearing officer's finding that the affidavit submitted by the officer to the Department of Revenue was a "sworn report" within the meaning of the statute.
Accordingly, we affirm.
NOTES
[1] The Colorado General Assembly has repealed and reenacted; with amendments, section 42-4-1202(3)(e). Colo.Sess.Laws 1983, ch. 476 at 1631-3.
[2] According to the record, appellant had a "strong odor of alcoholic beverage on his breath."
[3] The record reveals that appellant was advised of his Miranda rights at 12:01 a.m. on June 6, 1981, approximately one-half hour after appellant had been read the implied consent form.
[4] In Calvert, supra, we held that, under the particular circumstances of that case, appellant's request to consult with an attorney did not constitute a refusal because he was not advised that the right to remain silent did not include the right to prior consultation with an attorney.
[5] The advisement form read to appellant stated expressly in pertinent part: "You are further advised that proceedings under the implied consent law are civil in nature, not criminal, [and] as a matter of law you have no right to consult with an attorney before deciding to submit to, or refuse, a chemical test of your blood, breath, or urine."
[6] Appellant argues that a simple statement by the officer to the appellant, that the request to consult with an attorney would be deemed to be a refusal, would have eliminated appellant's confusion and advised him of his standing under the Implied Consent Law. Officer Motzkus testified, at the hearing, that appellant was "confused." In appellant's view, under the principle of law set forth in Calvert, supra, Officer Motzkus "caused" appellant's misunderstanding of the state of the law, and appellant therefore cannot be held strictly accountable for his refusal to take a chemical test. In our view, however, Calvert, supra, is distinguishable from this case on its facts. In Calvert, supra, the appellant was not advised that the right to remain silent and to call an attorney did not include the right to refuse to take the test until after he had spoken to an attorney. In this case, the officer advised appellant that appellant's Miranda rights did not include the right to consult with an attorney before deciding whether or not to submit to the test.
[7] Appellant conceded at oral arguments that DeScala v. Motor Vehicle Division Department of Revenue, supra, controls on this issue.