THE STATE OF WYOMING,
*Plaintiff and Respondent,*

vs.

ARTHUR C. FAULKNER,
*Defendant and Appellant.*

(No. 2663; February 7th, 1956; 292 Pac. (2d) 1045)

For the defendant and appellant, the cause was submitted upon the brief of Moran and Murphy of Riverton, Wyoming, who withdrew from the case after the filing of such brief, and also upon the brief and oral argument of Martin W. Littleton of Cody, Wyoming.

For the plaintiff and respondent, the cause was submitted upon the brief of George F. Guy, Attorney General, Robert H. McPhillamey, Deputy Attorney General, Howard B. Black and Walter J. Muir, Assistant Attorneys General, all of Cheyenne, Wyoming; oral argument by Mr. Black and William A. Smith of Lander, Wyoming, formerly County and Prosecuting Attorney of Fremont County.

## OPINION

PARKER, Justice.

A direct information containing forty-seven counts of embezzlement under § 9-322, W.C.S., 1945, was filed in Fremont County against defendant Arthur C. Faulkner. Defendant demurred to one count of the information and was sustained. During the trial, the prosecution dismissed five of the counts; and the case thereafter proceeded to conclusion on forty-one counts. The jury found defendant "not guilty" on all of the counts, except number five, and "guilty" on that count. The court, pursuant to the jury's finding, entered judgment of conviction, assessed all costs of the prosecution against defendant, and imposed a sentence of imprisonment. From the conviction, judgment, and sentence, the defendant has appealed to this court.

There are only three issues before the court at this time which will be discussed in the order listed: ·

(1) Was the defendant properly prosecuted under § 9-322, W.C.S., 1945, relating to "officer, agent, attorney, clerk, servant or employee" considering the fact that some evidence tended to show he was also "a trustee or other person acting in any fiduciary capacity," mentioned in § 9-328, W.C.S., 1945?

(2) Was the verdict, judgment, and sentence sufficiently supported by the evidence under the law?

(3) Inasmuch as defendant was acquitted by the jury of forty of forty-one counts, did the court err in assessing the entire cost of the prosecution against defendant?

An extended history of defendant appears both in the record and in the argument of counsel; but in the light of the issues, his background may, for our purposes, be sufficiently summarized as follows:

Arthur C. Faulkner was a livestock rancher, residing in Fremont County. In 1943, he sold his own livestock outfit, used the proceeds to purchase stock in the Yellowstone Sheep Company, leased certain of his land to the company, and was elected its vice-president and manager. He operated the Yellowstone Sheep Company's livestock outfit in Fremont County until October 31, 1951, when he was dismissed from that position.

John Hartt and Homer France, the two principal stockholders of the Yellowstone Sheep Company, lived in Carbon County, where the company maintained a bank account at the Rawlins National Bank. Messrs. Hartt and France apparently exercised little immediate supervision or jurisdiction over the defendant or the activities of the Yellowstone Sheep Company during the years from 1943 to 1951, and their connection with the company was limited for the most part to their presence at the annual meetings at which there was some cursory review of the situation relating to the business.

The principal incidents out of which the present prosecution grew were the establishing and maintaining by defendant, unknown to the Carbon County stockholders, of a bank account comprised of company moneys in the Lander State Bank, and the claimed appropriation and use by defendant for his own purposes, both by withdrawal and otherwise, of various moneys belonging to the company. Defendant's use of the money was in most instances admitted by him but justified on various grounds. This was true as to count five which charged that defendant paid one thousand dollars of the purchase price of his Buick automobile with company money.

Inasmuch as a dismissal or a judgment of acquittal was entered on all counts except that relating to count number five, we need discuss only facts relevant to that count. A summary of facts relating to this count is

given in appellant's brief; and since the State has tacitly accepted this version, it may be considered as containing the basic evidence adduced before the court: "Vehicles owned by the company at the ranch were heavy trucks and pickup trucks. From the time of the commencement of his employment Mr. Faulkner used his own car in traveling about the country on company business. In 1949 he decided that he needed a new car and decided to buy a Buick automobile. At that time he purchased a new Buick automobile for a total purchase price of thirty-three hundred dollars. He paid for the purchase in full at the time when it was made. Because of the use of his own car on company business throughout the many years and because, likewise, he knew that the new car would be used to a great extent, probably over half of its total use, in company business and in traveling about the country as was necessary in taking care of the business he decided that it was right and justifiable that the company should make a part payment on the purchase price of the new car. He paid for this car by taking thirteen hundred dollars in cash, a part of which was paid to him for the sale of his old car, and one thousand dollars which was paid to him by the company for the current lease of the land leased by the company from him, and added to this one thousand dollars of the company money. The total of thirty-three hundred dollars thus obtained was used to pay the purchase price of the Buick automobile. * * * "

The information on this count stated defendant unlawfully and feloniously took and appropriated to his own use one thousand dollars on deposit in the account of the Yellowstone Sheep Company in the Lander State Bank by drawing on the account for the purchase of the Buick automobile for his own use and in his own name.

Considering first defendant's claim of error arising from prosecution under the wrong statute, we find that defendant's counsel has insisted that "appellant, at all times mentioned in the information * * * was a trustee and fiduciary of and for the Yellowstone

Sheep Company as a matter of fact and law." To support this position, he has presented definitions of fiduciary, including § 8-101, W.C.S., 1945, as follows:

" 'Fiduciary' includes a trustee under any trust, expressed, implied, resulting or constructive, executor, administrator, guardian, conservator, curator, receiver, trustee in bankruptcy, assignee for the benefit of creditors, partner, agent, officer of a corporation, public or private, public officer, or any other person acting in a fiduciary capacity for any person, trust or estate."

Counsel points out that Mr. France and other witnesses for the State said Mr. Faulkner "was placed in a position of high trust," was "practically the whole works," and used similar language in describing defendant's position with the company. He insists that:

"The authority, powers, duties and responsibilities vested in him by the Board of Directors of the Yellowstone Sheep Company were such as to make him a fiduciary totally independently of the fact that he was a Trustee as a matter of law by virtue of his position as Vice President and Director of the corporation whose properties and affairs he was charged with administering."

In pursuing that view of the case, defendant's counsel has called to our attention the various sections of W.C.S., 1945, commencing at § 9-318, "Embezzlement of public funds"; § 9-319, "Fraudulent failure of public officer to account"; § 9-320, "Embezzlement by attorney"; § 9-322, "Embezzlement by employees"; § 9-323, "Embezzlement by attorney or collectors"; § 9-324, "Embezzlement by inn-keeper or bailee"; § 9-325, "Embezzlement by inn-keeper or bailee"; § 9-325, "Embezzlement by bailee"; § 9-326, "Embezzlement by treasurers"; § 9-327, "Misappropriation of public funds"; § 9-328, "Embezzlement by fiduciaries." He says "in the ten embezzlement statutes the status, the identity or class of the perpetrator is a condition precedent to any prosecution under the given statute. The legislature specifically designated and enumerated

the class of perpetrators eligible for prosecution under each separate embezzlement section." He admits that the "language of Section 9-322, *'Embezzlement by Employees'* is sufficiently broad and encompassing to include all the classifications of persons named and singled out for separate treatment and consideration in the other nine sections," and in oral argument states that "every trustee is both an agent and an employee." However, he asks such questions as: "Why did the legislature enact ten separate embezzlement sections? * * * Why was the penalty made different in most of them? * * * Why did the legislature specifically single out and classify by name and definition certain classes of persons as eligible for prosecution under the several separate embezzlement sections, when, if it was their intention otherwise, they could have more easily drafted a single embezzlement statute encompassing all the categories and conditions they so painstakingly made the subject of separate and distinct statutes for specifically designated perpetrators?" He argues that the mere passage of several sections relating to embezzlement suffices to show that the legislature meant to make each of the ten separate embezzlement statutes the exclusive method by which a person may be prosecuted for embezzlement in Wyoming. Moreover, according to counsel's view a prosecution is invalid if the defendant more properly belongs in a class mentioned in a statute other than the one under which the information is brought.

As we understand it, he contends that defendant is a fiduciary and, being so, can be prosecuted *only* under § 9-328, W.C.S., 1945, in which statute the words "trustee or other person acting in a fiduciary capacity" are mentioned. Defendant has cited no authorities, but has merely asked that his feelings as to the legislature's intent be adopted by this court, apparently as a rule of first impression.

Although all of the Wyoming statutes relating to embezzlement are mentioned peripherally by defendant's counsel, the only two directly enough in issue to warrant discussion here are § 9-322, W.C.S., 1945, entitled in the statute heading as "Embezzlement by employees," the one under which defendant was prosecuted below, and § 9-328, W.C.S., 1945, entitled in the statute heading as "Embezzlement by fiduciaries," the one under which counsel insists that defendant should have been prosecuted.

Actually, it is very difficult to determine with any degree of certainty the intention of a legislative body in passing any given statute. In the instant case, we have checked senate and house journals and other possible records of 1890 to determine what the intent of the legislature was, but without success. In making any interpretation of the legislature's intention, we call to mind what Chief Justice Marshall said long ago in United States v. Wiltberger, 5 Wheat. 76, 95, 96, 5 L.Ed. 37:

" * * * though penal laws are to be construed strictly, they are not to be construed so strictly as to defeat the obvious intention of the legislature. The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases, which those words, in their ordinary acceptation, or in that sense in which the legislature has obviously used them, would comprehend. The intention of the legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially, in a penal act, in search of an intention which the words themselves did not suggest. * * * "

In considering what our legislature might or might not have meant, we realize that our latitude in so doing is not great, and we are limited to the results of factual inquiry into the history of the enactment. Instinctively,

however, we revert to the history of embezzlement and to statements of authorities in the field. One of these, 1 Bishop of Criminal Law (9th Ed.) 413, 414, presents the following interesting statement:

"Embezzlement—is a statutory larceny, created by an apparently bungling attempt to eliminate one of the elements from the common - law offense * * * 'trespass' * * * . The natural and easy way to amend the law would have been to provide that the element of trespass should no longer be essential in larceny. But in actual life, the common instance, which therefore presented itself to the legislative thought, was that of a clerk or other servant to whom money or an article of merchandise was delivered for the master, and who thereupon took it himself; whereby, without any trespass, he did what was equivalent to stealing it. Thereupon Parliament declared such a transaction to be larceny, and defined the punishment therefor. And our States have followed more or less closely the English lead. Palpably this enactment was defective, and the various legislatures have been occupying themselves ever since in putting patches upon it, instead of doing the effective thing which we thus see to have been the true course from the beginning. * * * ."

There is a paucity of cases dealing specifically with the principle in question, and we have been unable to find any dealing with an identical statute. One case from which defendant's counsel might on first review derive some consolation is that of Robertson v. State, 207 Ind. 374, 192 N.E. 887, 888, 889, in which the defendant was a factor to whom a piano was shipped for sale and who appropriated the proceeds of the sale to his own use. The prosecution there was brought under the section of the Indiana Criminal Code almost identical to our § 9-322, W.C.S., 1945; but Indiana has a section dealing with factors similar to our § 9-325, W.C.S., 1945, and defendant's counsel insisted that the prosecution should have been brought under the latter section. The Indiana court in reversing the con-

viction of the defendant said that although "a factor is in the last analysis an agent, the agency is a limited one. * * * The evidence shows * * * that he was not an agent but a factor, that he took in his possession not money, but pianos to the possession of which he was lawfully entitled."

It is unnecessary for us to either adopt or criticize the view of that court, since in the instant case defendant by his counsel freely admits that he is both an employee and an agent. Neither counsel nor court is justified in reading into § 9-322, W.C.S., 1945, a meaning other than that which results from a fair analysis of it. When the legislature in that section discusses employees and agents, it would seem to embrace every person who, by general coverage and common usage, is included in the specified words.

Proper legal interpretation does not permit our pondering the reason of the legislature for providing a different punishment in the case of violation of each embezzlement statute. Such speculation could justify defendant's theory that each statute is exclusive for a designated class, it might bear out Bishop's theory that the legislature was merely "patching," or it could provide basis for any of innumerable views as to the motive for passage of the statutes. Any such conjecture is unwarranted either in law or in fact.

Authorities on the subject from Lord Coke to Sutherland have stated that if a statute is clear and unambiguous on its face, it need not and cannot be interpreted by a court. See 2 Sutherland Statutory Construction (3rd Ed.) 316. We think § 9-322, W.C.S., 1945, needs no interpretation as it clearly relates to any persons within one of the classes specified. Defendant was an employee and agent and hence was properly prosecuted under § 9-322, W.C.S., 1945.

Proceeding next to defendant's second point, we consider whether there is sufficient evidence to sustain

the verdict. We could analyze and present portions of the record in some detail, quoting in length from the testimony; but the basic facts relating to the taking of the money for use in purchasing the automobile are contained in the statement of defendant's counsel hereinbefore mentioned, admitting that defendant paid one thousand dollars of Yellowstone Sheep Company money toward the price of the automobile which he purchased in his own name. Whether or not this act of taking money constituted embezzlement depends on defendant's intent and upon the bona fides of his actions, as determined by the agency authorized to determine what the facts were—in this case, the jury. Since the proof of intent is the pivotal component of the crime charged, it might be well for us to consider the general law on this subject as it relates to embezzlement:

"The necessary intent may be inferred from the circumstances surrounding the transaction, such as concealment of the receipt or appropriation of the money or property, the falsification of accounts, the expenditure of the money, flight, and the like. * * *" 1 Brill, Cyclopedia Criminal Law, Embezzlement § 551.

" * * * The criminal intent must be gathered from the acts of the accused and the circumstances surrounding the particular case rather than from his express declarations. Its existence may be presumed from the doing of the wrongful, fraudulent, or illegal act. * * * " 18 Am. Jur., Embezzlement § 24.

See also 29 C.J.S., Embezzlement § 12, n. 69; 20 C.J., Embezzlement § 20, n. 64. The jury was entitled to determine the credibility of the witness and to consider explanations and evidence of occurrences relating to the questioned transaction, such as the deposit of money in an unauthorized bank, the failure of defendant to report the purchase of the automobile to the company, and defendant's explanation of the car purchase. See McCann v. United States, 2 Wyo. 274. These may have shed considerable light on the subject, and it is beyond the province of this court to now inquire into

the effect which this evidence had upon the jury. Suffice to say that testimony on these subjects might have been properly considered by the jury as proving mala fides, just as defendant's testimony that he honestly had a right to the money and to the automobile might have been found to prove his bona fides. This truly constituted a conflict of the evidence and, we think, a substantial one. It is elementary in this State that the reviewing court should not interfere with the judgment of a fact-finding body when there exists a substantial conflict in the evidence. See United States Fidelity & Guaranty Co. v. Cook, 43 Wyo. 356, 5 P. 2d 294; Vissenberg v. Bresnahen, 65 Wyo. 367, 202 P. 2d 663; 203 P. 2d 966; Montgomery Ward & Co. v. Arbogast, 53 Wyo. 275, 81 P. 2d 885; Goldberg v. Miller, 54 Wyo. 485, 93 P. 2d 947, 96 P. 2d 570. This rule is peculiarly applicable in a case in which the jury's attention was specifically called by the court to the fact that they should consider defendant's honest belief and just claim of right in determining whether or not a crime was committed. This was done in several instructions as follows:

"You are instructed that if the moneys shown to have been retained by the defendant were so retained by him under the honest belief by him that he had the right to do so he would not be guilty of embezzlement." Instruction 8a.

"To certain of the charges herein the defendant has interposed a defense of good faith, and the court instructs you that if you find the defendant, Arthur C. Faulkner, in good faith used the money he is charged with having taken in the bona fide belief that he had a right to retain or use the moneys as reimbursement for amounts due him by his employer, and if he thought he had a just claim of right to such moneys, such taking is not embezzlement. * * * " Instruction 8b.

These, together with other instructions to the effect that felonious intent of defendant must be proved beyond a reasonable doubt before there could be a conviction, would seem to have presented the matter to the

jury in such a way that they could act upon it intelligently. They were the judges of the credibility of the witnesses and entitled to evaluate the testimony adduced at the trial. For this court to hold that there was insufficient evidence on which to predicate the finding of intent would, in effect, be for us to judge from the printed record the credibility of the witnesses and to evaluate the effectiveness of their testimony. This, we think, should not be done.

Defendant complains of the court's action in assessing costs of the prosecution for all of the forty-seven counts when the court sustained a demurrer on one count, the State dismissed five counts, the jury acquitted defendant on forty counts and convicted him of only one. Counsel cited no cases or discussion bearing closely on this point and careful research has disclosed none. It follows, therefore, that for our decision on this point we must rely upon the common law as altered by the Wyoming statutes. Both counsel for the State and for the defendant in their briefs referred to 20 C.J.S., Costs § 435:

" * * * At common law costs as such in criminal cases were unknown. As a consequence it is the rule as well in criminal as in civil cases that the recovery and allowance of costs rest entirely on statutory provisions —that no right to or liability for costs exists in the absence of statutory authorization. Such statutes are penal in their nature, and are to be strictly construed."

Applying this rule to our situation, we find that the only section of the statute on the subject is § 9-105, W.C.S., 1945, which provides, inter alia:

" * * * in all cases of a conviction of an offense, the court shall render judgment against the defendant for the costs of prosecution."

Under this statute, a court is required to render judgment for costs when there is a conviction, but is without authority to render such a judgment when there is an acquittal. It must be conceded that if forty-seven

different criminal cases are filed against a defendant there can be no costs assessed in any case in which the defendant is acquitted.

We think the same result should be reached in a situation in which various counts are permissibly joined in a single information. This, of course, is subject to exception in situations in which the several offenses charged grow out of the same acts or transactions, e.g., §§ 10-712, 10-714, W.C.S., 1945, and in all cases in which a verdict of "guilty" and of "not guilty" (or a judgment of dismissal) are based upon substantially the same evidence. Subject to the noted exception in such cases it is proper that the assessed costs should bear the same proportion to the total costs that the "guilty" verdicts bear to the total counts in the information at the beginning of the trial. The equity of the situation may be arguable, but it is clear that there is no statutory authority for levying costs in instances of acquittal.

The court is directed to reduce the judgment for costs to conform with the views herein expressed. Subject to such reduction, the case is affirmed.

*Affirmed as modified.*

BLUME, C. J., and HARNSBERGER, J., concur.