Argued August 23, affirmed September 23, reconsideration denied
October 30, petition for review denied December 10, 1974

## PORT OF ST. HELENS, STEWARD ET AL,
*Respondents, v.* GEISER (No. 20881),
*Appellant.*
526 P2d 626

*David B. Williamson,* St. Helens, argued the cause for appellant. With him on the brief were Williamson & Whipple, St. Helens.

*Howard A. Rankin,* Portland, argued the cause for respondents. With him on the brief were Rankin, Walsh, Ragen & Roberts, Portland, and Robert R. Vagt and Vagt, Olsen & Coon, St. Helens.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

LANGTRY, J.

This is a proceeding brought by the Port of St. Helens for validation of revenue bonds pursuant to ORS 33.710 and 33.720. The trial court found the bond valid, and an intervening freeholder has appealed that ruling. Essentially, we are testing the authority of the Port District to issue bonds pursuant to ORS ch 777 in much the same way the same authority was tested

in *Carruthers v. Port of Astoria,* 249 Or 329, 438 P2d 725 (1968), and much of our decision here is dictated by that opinion.

Portland General Electric Company (PGE), as a 67.33 percent owner, is developing the Trojan nuclear power plant in the area of the Port of St. Helens. The other ownership of the facility has no importance in our problem. The usefulness of the Port's issuing the bond is that pollution control facilities financed through municipal corporations, although they are in aid of a private industry and the obligation is only repayable from revenues of the facilities, are income tax exempt on their bond interest under federal law. The nuclear pollution control facility involved in this case can be financed for an estimated $27,000,000. Hence, in order that PGE may have the advantage of the lower interest rate growing out of the income tax exemption status of the bond, the Port has taken an easement to and a lease of the pollution control facility, and has sold to Seattle First National Bank a bond for $27,000,000 based on the revenue from the facility, and then has leased the facility back to PGE, which has agreed to operate it and pay rents which will meet all obligations on the bond. The general credit of the Port has been carefully eliminated from any status of obligation, in the same way as was done in *Carruthers v. Port of Astoria,* supra.

There are four challenges to the project which merit a general discussion, which follows.

■ The manufacturing of electricity, regardless of the process being a transformation of energy from one form to another, is truly manufacturing, and it is done by an industry. *In Re Answer of Minnesota Power & Light Co.,* 289 Minn 64, 182 NW2d 685 (1970) ; *Chicago,*

*M., St. P. & P. R. Co. v. Custer Co.,* 96 Mont 566, 32 P2d 8 (1934).

ORS 777.250 (1) is broad enough, particularly in light of *Carruthers,* to give the Port authority to do what it has undertaken. It provides that a port may

"* * * acquire personal properties including but not limited to machinery and equipment * * * suitable for use by any industry for the manufacturing * * * of any * * * products or by any commercial enterprise in * * * distributing or selling or servicing any products of * * * industry. The port has full power to lease * * * the buildings, improvements and personal property, together with the lands * * *."

ORS 777.116 authorizes a port to "acquire * * * any interest" in "real and personal property."

In *Carruthers* the court examined what public purpose must be served by a port in lending its aid to industry as was done there and is proposed here. The court said that

"* * * '* * * [T]he relevant inquiry would seem to be whether the proposed project will augment the community's total value position.' * * *

" '* * * [S]uch a judgment is more appropriate for legislative than judicial action. The judiciary should invalidate expenditures only where reasonable men could not differ as to their lack of social utility.' * * *" 249 Or at 341.

■ The fact that the pollution control facilities are only part of the whole or that PGE as the operator owns only 67.33 percent of the whole project is inconsequential in the face of such a test and of the statutory authority the legislature has conferred on the Port. It cannot be cogently argued that nuclear pollution control facilities have no public purpose, or that the in-

dustry of generating electric power itself has no public purpose. Either or both add substantially to the community's total value position, regardless of arguments pro and con on the wisdom of producing energy through nuclear fission.

One procedural challenge is raised: that the emergency clause on the ordinance authorizing the bond recited no discernible emergency.

The clause recited that the Oregon Department of Environmental Quality had ordered PGE to install "certain pollution control facilities" for protection of the Port and its citizens, and that the Board of Port Commissioners found an emergency to exist "and that such equipment must be installed promptly * * *."

■ The Board is given authority to enact emergency legislation by ORS 777.190 and 198.550. An emergency clause has the effect of making the legislation immediately effective rather than at a later date.

■ The challenger simply argues that all the emergency clause states is that PGE has been ordered to install the pollution control facilities—"if there is an emergency it is PGE's, not the petitioners['] * * *."

The argument is pointed, but it overlooks the finding of the Board that the facilities are "promptly" needed, and more importantly, it overlooks Section 10 of the ordinance which immediately precedes the emergency clause:

"That it is hereby found, determined and declared that the prompt issuance of the Series 1973A Bond is necessary in order to ensure the continued acquisition and construction of the pollution control facilities described in the preamble hereof and,

therefore, that this Ordinance requires immediate action."

When the two paragraphs are read together, we think they recite on their face such a need for immediate legislative action as has commonly been accepted as valid by courts. *Greenberg v. Lee et al.,* 196 Or 157, 248 P2d 324, 35 ALR2d 567 (1952) ; *Joplin v. Ten Brook et al.,* 124 Or 36, 263 P 893 (1928).

Affirmed.