**The STATE of Wyoming, Appellant (Plaintiff),**

v.

**Mike Flabio MARQUEZ, Appellee (Defendant).**

No. 5536.

Supreme Court of Wyoming.

Jan. 15, 1982.

---

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Maureen D. Rogers, Asst. Atty. Gen., Cheyenne, for appellant.

Bob C. Sigler, Sigler & Pauli, Torrington, for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

BROWN, Justice.

This appeal by the State is from the district court's judgment and order rescinding, revising and setting aside an order from the justice of the peace which sustained appellee's license suspension.

On September 26, 1980, appellee was arrested and charged with the offense of driving while under the influence of an intoxicating beverage (DWUI). Following his arrest the appellee was requested to submit to a chemical test to determine the alcohol content of his blood. An officer read appellee the following statement:

"* * * As a law enforcement officer I advise you that you are under arrest and officially charged with DWI [sic]. I am requesting that you submit to a chemical test of your breath, blood, or urine. Your failure to submit to the chemical test may result in the suspension of your privilege to operate a motor vehicle. You may go to the nearest hospital or clinic and se-cure a test at your own expense or you may have the test administered by a person at a place and in a manner prescribed by me at the expense of my agency."

Appellee did not submit to the test and his license was suspended by the Motor Vehicle Division of the Department of Revenue and Taxation. Following an administrative hearing the justice of the peace sustained the suspension of appellee's license on the basis of appellee's failure to submit to the chemical test.

On appeal the district court rescinded the order of the justice of the peace court.

We will reverse the district court.

The issue on appeal is: Does the implied consent law require that a person arrested for driving while under the influence of alcohol or intoxicating beverages be advised that his driving privileges *may* be suspended or that they *will be suspended for thirty days*, if he fails to submit to the chemical test.

The statutory provisions that we deem controlling in this case are:

"(a) any person who operates a motor vehicle upon a public street or highway is deemed to have given consent, subject to the provisions herein, to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood. * * * *The arrested person shall be told that his failure to submit to the chemical test may result in the suspension of his privilege to operate a motor vehicle. * * * *" (Emphasis added.) Section 31–6–102(a), W.S.1977.

"(c) If a person under arrest refuses * * to submit to a chemical test * * * none shall be given, but upon the receipt of the law enforcement officer's sworn report or statement that he had probable cause * * and that the person refused to submit to the test upon the request of the law enforcement officer, the department shall suspend his operator's license for a period of thirty (30) days subject to review as

herein provided."[1] Section 31–6–102(c), W.S.1977.

"(b) The scope of such a hearing for purposes of this act [§ 31–6–101 to 31–6–106] shall cover the issues of whether a law enforcement officer had probable cause * * * whether the person was placed under arrest, and whether, he refused to submit to the test * * * *and whether*, except for the persons described in this act who are incapable of refusing, *he had been told that his driving privileges would be suspended for thirty (30) days if he refused to submit to the test.* At the conclusion of said hearing, the justice of the peace * * * shall order that the suspension either be rescinded or sustained." (Emphasis added.) Section 31–6–103(b), W.S.1977.

A reading of § 31–6–102(a) and § 31–6–103(b), W.S.1977, suggests that there is an inconsistency on exactly what a person who is arrested on suspicion of DWUI should be told. We do not think this apparent inconsistency is fatal to the implied consent law. A fair reading of the entire implied consent law indicates that a person arrested for DWUI should be warned that his driving privileges will be in jeopardy unless he submits to a chemical test. We do not think precise words are determinative unless an arrested person can show that the language used by the arresting officer was misleading or was not entirely clear.

The Implied consent law, §§ 31–6–101 through 31–6–106, W.S.1977, was first enacted in 1971. Section 31–6–102(a) as originally enacted provided that "such arrested person shall be told that his failure to submit to such chemical test may result in the suspension of his privilege to operate a motor vehicle *for thirty days.*" (Emphasis added.) Ch. 158, § 2(a), S.L. of Wyoming, 1971. The words "for thirty days" were deleted in 1973 when the implied consent law was amended. Ch. 195, § 1(a), S.L. of Wyoming, 1973. When the implied consent law was again amended in 1977, the words

"for thirty days" were again left out of the amendment. Ch. 13, § 1(a), S.L. of Wyoming, 1977. Section 31–6–103(b), W.S.1977, is the same as originally enacted in 1971. Ch. 158, § 3(b), S.L. of Wyoming, 1971.

We do not know that there is any particular significance to the history of the implied consent law, except that the apparent inconsistency has been in the law since its beginning, and it is therefore surprising that this matter has not been brought to our attention before.

In *State v. Chastain*, Wyo., 594 P.2d 458, 461, (1979) this Court stated:

"* * * The implied Consent Law was not designed to give greater rights to a suspected drunken driver than were constitutionally afforded before its passage. Its purpose was intended to impose a condition on the right to operate a motor vehicle on the streets and highways of this state. The condition requires that a driver, by so operating a vehicle in Wyoming, consents to submit to chemical tests for intoxication under statutorily determined circimstances. The refusal to submit to a test can result in revocation of a driver's license. It was intended to facilitate the tests for intoxication and not to inhibit the ability of the state to remove drunken drivers from the highways of our state. In light of this purpose, it must be liberally construed to effectuate its policies. [Citations.]"

A fair reading of *State v. Chastain*, supra, indicates that the arresting officer is required to advise the motorist of the provisions contained in § 31–6–102(a), W.S.1977, as follows:

"The arrested person shall be told that his failure to submit to the chemical test *may result in the suspension of his privilege* to operate a motor vehicle. * * *" (Emphasis added.)

We cannot dispose of this case on the authority of *State v. Chastain*, supra, alone. The question of the apparent conflicting language in § 31–6–102(b), W.S.1977, was not an issue in the *Chastain* case.

---

1. Section 31–6–102(d), W.S.1977, sets out the procedure for requesting a review of the sus-    pension.

The ordinary rules of statutory construction are of only minimal help in resolving the apparent conflict in § 31–6–102(a) and § 31–6–103(b), W.S.1977. We conclude that such sections cannot be reconciled.

" * * * [L]egislative intention must be sought from the whole act, and not merely from certain parts of it; and where certain provisions of an act are inconsistent with other provisions of the same act, then it becomes incumbent upon the courts to determine which must prevail in order to carry out the legislative purpose and intention. * * * " *Golden Valley County v. Lundin*, 52 N.D. 420, 203 N.W. 317, 319 (1925).

" * * * [W]hen the provisions of related statutes are irreconcilable, under reasonable interpretation, and one must give way to the other, ordinarily the last in point of enactment will prevail as being the latest expression of the legislative intent. [Citations.]" *Victory Cab Co. v. City of Charlotte*, 234 N.C. 572, 68 S.E.2d 433, 437 (1951).

See also *Johnson v. Safeway Stores, Inc.*, Wyo., 568 P.2d 908 (1977); *Askew v. Schuster*, Fla., 331 So.2d 297 (1976); *Cable-Vision, Inc. v. Freeman*, Fla.App., 324 So.2d 149 (1975); *In re Port of St. Helens of Columbia County*, 19 Or.App. 87, 526 P.2d 626 (1974); and 14 Uniform Statutory Construction Act, (U.L.A.) § 18. (This Uniform Act not adopted in Wyoming.)

Section 31–6–102(a) in its present form was in fact enacted later than § 31–6–103(b); however, we do not attach much significance to that fact.

Cases cited by both the State and appellee other than *State v. Chastain*, supra, are of limited value with respect to the issue in this case because they are not concerned with irreconcilable statutory provisions. We agree with appellee that "This case is one of first impression before this court." *Pryor v. State Department of Motor Vehicles*, 8 Wash.App. 953, 509 P.2d 1018 (1973), cited by both parties, held that it is not

necessary to tell an arrested driver the specific number of days that his driving privileges may or will be suspended if he refused to take the chemical test. *Calvert v. State Department of Revenue, Motor Vehicle Division*, 184 Colo. 214, 519 P.2d 341 (1974), held that the implied consent law requires that an arrested driver must be warned of the probable consequences of his refusal to take the chemical test before his license can be revoked. It also held that the warning should be phrased so that a person of normal intelligence will understand the consequences of his actions.

Here we seek a construction which will give effect to the purpose of the implied consent law and the intention of the legislature. We said:

"Statutes should be given a reasonable, practical construction. * * * " *State Board of Equalization v. Cheyenne Newspapers*, Wyo., 611 P.2d 805, 809 (1980). Also,

" * * * A statute should be construed in such a fashion that one provision will not destroy another. [Citation.]" *DeHerrera v. Herrera*, Wyo., 565 P.2d 479, 482 (1977).

It is quite apparent that inadvertent language slipped into either § 31–6–102(a) or § 31–6–103(b), W.S.1977. Effect simply cannot be given to both provisions of the law. Section 31–6–102(a), W.S.1977, clearly says that the arrested person shall be told that his failure to submit to the chemical test may result in the suspension of his privilege to operate a motor vehicle. Section 31–6–103(b), W.S.1977, speaks of what the hearing officer[2] must determine, which is, among other things, whether the arrested person had been told that his driving privileges would be suspended for thirty days if he refused to submit to a test.

We conclude that the legislature did not intend the language employed in § 31–6–103(b), W.S.1977, and that the language "would be suspended for thirty days" was inadvertent. This conclusion is consistent

2. A hearing officer may be a county judge or justice of peace of the county. Section 31–6–102(d), W.S.1977.

with the purpose of the implied consent law. An arresting officer has no right to tell a driver what the Department of Revenue and Taxation will do. The officer has no control over that department. If an arresting officer were to tell a driver that his driving privileges would be suspended, this representation would be similar to an arresting officer telling a suspect what sentence the judge would give him. No authority need be cited in support of the impropriety of this advice to a suspect. Granted, if a driver refuses to submit to a chemical test, as a practical matter, his driving privileges will probably be suspended by the Revenue and Taxation Department. However, the suspension is not automatic. The arresting officer may not, for a variety of reasons, make the report required by § 31–6–102(c), W.S.1977. The employees in the Revenue and Taxation Department may not, for reasons of their own, actually order the suspension of the driver's driving privileges. In any event, it would be presumptuous of the arresting officer to tell the driver that there would be a suspension of his license when he did not, and could not know whether there would be. People who run afoul of the law are quite ingenious in thinking of things to complain about. If an officer had in fact told the driver that his driving privileges would be suspended, we suspect, for example, he may be in court claiming threats, intimidation, and duress.

■ We conclude, therefore, that an arresting officer must tell the arrested person that failure to submit to the chemical test may result in the suspension of his privilege to operate a motor vehicle. We further conclude that when the hearing officer is making his determination at an administrative hearing, he is required to find whether the arrested person has been told that his driving privileges may be suspended.

The judgment and order of the district court is reversed and the order of the Department of Revenue and Taxation suspending appellee's driving privileges for thirty days is reinstated.

THOMAS, Justice, dissenting, with whom ROSE, Chief Justice, joins.

I cannot agree with the views of the majority of the court in this case. I perceive a different legislative intent, which causes me to conclude that the erroneous language in these two conflicting statutes is that found in § 31–6–102(a), W.S.1977. I am convinced that the correct language is that found in § 31–6–103(b), W.S.1977, as I perceive the intent of the legislature, and I would affirm the district court.

My point of departure is *State v. Chastain*, Wyo., 594 P.2d 458 (1979), which is discussed in the majority opinion. The majority opinion does not note, however, that the careful reading of § 31–6–102(a) described in that case as the first step in an analysis of the implied consent law led the court to this conclusion:

"(4) In order to obtain a proper consent under § 31–6–102(a), certain information must be conveyed to a suspect. It is not necessary that this be done by the law enforcement officer directly (e.g., it could be funneled through a third person who is acting as an agent of the law enforcement officer where the suspect does not speak or understand English or where the suspect is conscious and has the capacity to consent but where, for medical reasons, the law officer would not be permitted to address the suspect in person). However, it is required that it be done *and that the suspect consent to the test in the light of that information. * * *"* (Emphasis added.) 594 P.2d at 463.

In *State v. Chastain*, supra, we described a statutory scheme intended by the legislature to impose a condition on the right to operate a motor vehicle in Wyoming, which condition is a consent to chemical tests for intoxication. At the hazard of license suspension the suspect can refuse to submit to the tests, but we there held that the exercise of the suspect's choice should be based upon information.

If information is required, then the information which is furnished should be correct. The statute which provides for the scope of the hearing on judicial review sets forth the

information which is correct. It states, in part:

" * * * [W]hether * * * he had been told that his driving privileges would be suspended for thirty (30) days if he refused to submit to the test. * * *" Section 31–6–103(b), W.S.1977.

The conclusion reached by the majority that advice in accordance with § 31–6–102(a), that "failure to submit to the chemical test may result in suspension of his privilege to operate a motor vehicle" is correct information, is fallacious. That is not what the legislature intended.

The legislature intended that the operator's license should be suspended for a period of thirty days if he refused to submit to the test. The statute provides that the department *shall* suspend the operator's license for a period of thirty days upon receipt of the sworn report or statement of the law enforcement officer that he had probable cause to believe the arrested person was driving or was in actual physical control of a motor vehicle upon a public street or highway while under the influence of intoxicating liquor to a degree which rendered him incapable of driving such vehicle. Section 31–6–102(c), W.S.1977. The language of the statute does not permit the employees of the Revenue and Taxation Department, Motor Vehicle Division, for reasons of their own, to not order the suspension, as suggested by the majority. Suspension is mandatory. The statutory scheme also assumes a duty on the part of the law enforcement officer to submit the sworn report or statement. In light of the statutory purpose he would be derelict in the performance of his duties if he did not do so, and he might well have committed an unlawful arrest if he could not do so.

There is a clear manifestation of the intent of the legislature that the operator's license be suspended for a period of thirty days if he refuses to submit to the chemical tests upon request of the law enforcement officer. *State v. Chastain*, supra, holds, in effect, that the suspect must be informed of that result, and that holding can only mean that the suspect must be correctly in-

formed. To the extent that § 31–6–102(a) appears to justify furnishing incorrect information to the suspect, it must yield to the provisions of § 31–6–103(b) with which it conflicts. Advice in accordance with this latter statute would furnish correct information to the suspect.

The language of § 31–6–103(b) must be given paramount significance for yet another reason. In *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the Court was concerned with the constitutionality of the Georgia statute providing for suspension of the motor vehicle registration and driver's license of an uninsured motorist who was involved in an accident unless security to cover damages was posted. The Court there said at 402 U.S. 539:

" * * * Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. [Citations.] This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' * * *"

The legislature, in delineating the scope of the hearing in § 31–6–103(b), has articulated the due process rights of the licensee. Given the conflict which appears in this instance the legislative intent manifested in the delineation of the scope of the due process hearing should not be subjected to a constitutional hazard by a construction of the statute that deletes a part of those due process rights.

We have recognized that a license to operate a motor vehicle is a privilege and not a right. *Department of Revenue and Taxation, Motor Vehicle Division v. Shipley*, Wyo., 579 P.2d 415 (1978). This holding is consistent with the general rule that statutes authorizing the suspension of motor vehicle operator's permits are for the pro-

tection of the public and are not intended to be punitive in nature. E.g., *Campbell v. State Department of Revenue, Division of Motor Vehicles*, 176 Colo. 202, 491 P.2d 1385, 60 A.L.R.3d 419 (1971); *State v. Pruett*, 91 Idaho 537, 428 P.2d 43 (1967); *Anderson v. Commissioner of Highways*, 267 Minn. 308, 126 N.W.2d 778, 9 A.L.R.3d 746 (1964); *In re France*, 147 Mont. 283, 411 P.2d 732 (1966); *Texas Department of Public Safety v. Richardson*, Tex., 384 S.W.2d 128 (1964); *Ballard v. State Motor Vehicle Division*, Utah, 595 P.2d 1302 (1979); *Thurston County v. Gorton*, 85 Wash.2d 133, 530 P.2d 309 (1975). In *Anderson v. Commissioner of Highways*, supra, the privilege to drive was recognized as a valuable one, and in *Ballard v. State Motor Vehicle Division*, supra, the right to operate a motor vehicle was recognized as a valuable right or privilege not to be taken away without due process. Our legislature has recognized a significant impact in connection with the suspension of a license to operate a motor vehicle. In § 31–7–127, W.S.1977, the drivers' license division is given discretion in some instances to rescind or modify an order of suspension "where undue hardship would result from a failure to extend such privilege."

While by definition such statutes would not come within the rule requiring that a penal statute be construed most favorably to the accused (*Horn v. State*, Wyo., 556 P.2d 925 (1976); *State v. Faulkner*, 75 Wyo. 104, 292 P.2d 1045 (1956)), the cases and our statute appear to recognize the presence of a de facto, if not a de jure, penalty in connection with the suspension or revocation of drivers' licenses. The result reached by the district court represents a construction of the conflicting provisions in this statute which is more favorable to the accused person, and in my view that is an appropriate treatment.

For the reasons set forth above I would affirm the disposition in this case by the district court.