**The PEOPLE of the State of Colorado,
Plaintiff–Appellee,**

**v.**

**Vincent PALOMO, Defendant–Appellant.**

**No. 09CA1095.**

Colorado Court of Appeals,
Div. III.

Aug. 4, 2011.

Rehearing Denied Sept. 29, 2011.

John W. Suthers, Attorney General, Rhonda L. White, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, James S. Hardy, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

Vincent Palomo, defendant, appeals his conviction entered on jury verdicts finding him guilty of vehicular eluding, § 18–9–116.5, C.R.S.2010 (class 5 felony), and the lesser nonincluded charge of eluding or attempting to elude a police officer, § 42–4–1413, C.R.S. 2010 (class 2 traffic offense). He also appeals the assessment of costs and fees, including the costs of prosecution, in the amount of $2,379.65. We affirm his conviction, vacate the order assessing the costs of prosecution, and remand for further proceedings.

According to defendant's statement given during an interrogation following his arrest, he picked up a friend who was carrying a handgun, which he hid under the hood of the vehicle. The two men went to a bar for drinks, where they met defendant's sister, niece, and cousin to celebrate defendant's sister's birthday. Two other patrons, one of whom apparently was the victim, intruded on defendant's party, causing a confrontation in the bar.

After closing, defendant and his friend left the bar and encountered the other party in the parking lot. According to defendant, he and his friend started to drive away but his friend asked defendant to stop while they were still in the parking lot. The friend exited the vehicle and fired three shots, one of which inflicted a nonfatal head wound to the victim. The victim and others gave chase in another vehicle; they collided with defendant's vehicle, damaging it and totaling theirs.

Shortly thereafter, a sheriff's deputy, who had received a description of defendant's vehicle, saw the vehicle, activated his emergency equipment, stopped the vehicle, identified himself, ordered both occupants to put their hands outside the window, and told them they were under arrest. After initially placing his hands out the driver's window, defendant pulled them back in and drove away at a high rate of speed. With three police vehicles pursuing him, defendant ran several stop signs and drove forty-five miles an hour over the speed limit. The chase continued a considerable distance until defendant turned into a dead-end street, where he stopped at or near his girlfriend's home. Defendant and his friend were arrested.

Defendant argues that the trial court erred by (1) not granting his challenge for cause to a potential juror; (2) not instructing the jury on the affirmative defense of duress; and (3) awarding costs of prosecution that bore little, if any, relationship to the counts for which he was convicted.

## I. Challenge for Cause

Defendant first contends that the trial court erred when it denied his challenge for cause to a potential juror (TJ). We disagree.

### A. Standard of Review

A trial court's denial of a challenge for cause as to a prospective juror is reviewed for an abuse of discretion. *Carrillo v. People,* 974 P.2d 478, 485 (Colo.1999). A trial court's ruling on a challenge for cause will only be reversed if there is no evidence in the record to support it. *People v. Richardson,* 58 P.3d 1039, 1042 (Colo.App.2002).

### B. Law and Analysis

A juror shall not be disqualified if the trial court is satisfied that the juror will follow the court's instructions and base his or her verdict on the evidence presented at trial. § 16–10–103(1)(j), C.R.S.2010; *People v. Strean,* 74 P.3d 387, 390–91 (Colo.App.2002).

Defendant asserts that TJ was biased against criminal defendants and would not hold the prosecution to its burden to prove the culpable mental state of the offenses charged. This concern arose from the following exchange between TJ and defense counsel (D) during voir dire:

D: So I just want to ask you in general then if your position is that if essentially if

a person fires a gun in the vicinity of other people, regardless of their mental state, whether it is reckless, or they are acting in a knowing manner, your position is that it is their intent to cause the death of another person? Is that your position?

TJ: My position is that it is when you put your hand on the weapon, you take full responsibility for what happens with that weapon. I believe in personal responsibility.

D: Okay. And would that position that you have, and you feel very strongly about, I can see by the way you are talking about it, that you absolutely believe this would put you in a position where you are not going to make the Prosecution prove a person's mental state, you know what their mental state is?

TJ: No, ma'am. *I don't believe mental state, okay? I believe that the case for mental state is over used.*

D: Okay.

TJ: Okay. *Mental state doesn't matter.* I was mad as hell and pointed a gun to scare somebody off. When I pointed at someone and pulled the trigger, you have to infer, in my opinion, that [I] intended to inflict harm.

(Emphasis added.)

At the conclusion of voir dire, the court (C) asked TJ additional questions:

C: . . . However, the culpable mental state, under the law, is as much an element and a part of the act of the crime as the act itself. Do you understand that, sir?

TJ: Uh-huh.

C: And, you know, I think there has been some issue raised in the questioning regarding mental state. This is not a case in which—in which there is an assertion of insanity or impaired mental condition, *but culpable mental state is as much an element of the offense as any other element of the offense as a matter of law. Would you follow that law or would you disregard the culpable mental state component of the instruction?*

TJ: *No. I would follow the law.*

(Emphasis added.)

The trial court denied defendant's challenge for cause, stating:

[TJ] indicated he can be fair and impartial, follow the law in this case. Although he has somewhat demonstrated strong opinions, certainly nothing that demonstrates bias against either party. He indicated clearly he would follow the law, so the challenge for cause as to [TJ] is denied.

■ In our view, TJ's conversation with defense counsel was in the nature of an abstract discussion about personal responsibility and his conversation with the trial court was about the elements of an offense and the obligation of the jurors to follow the trial court's instructions. It is the latter subject that should be the focus of the trial court in its consideration of a challenge to a prospective juror for cause. Although TJ stated that "the case for mental state is over used," and that "mental state doesn't matter," when questioned by the court he unequivocally stated that he would both follow the law and not disregard the culpable mental state element of an offense when instructed that it needed to be proved.

Defendant argues that the trial court's rehabilitation questions were leading, and that TJ was only responding to please the court. However, it is for the trial court to determine credibility and whether a person is intimidated or insincere. In the event there are inconsistent responses, only the trial court can fully appraise the true attitudes and state of mind of a potential juror. *Carrillo,* 974 P.2d at 487 (citing *People v. Sandoval,* 733 P.2d 319, 321 (Colo.1987)).

Therefore, we conclude that the trial court did not abuse its considerable discretion in denying defendant's challenge for cause.

## II. Duress

Defendant next contends that the trial court erred when it refused to instruct the jury on the affirmative defense of duress. We are not persuaded.

## A. Standard of Review

A defendant is not entitled to an instruction on an affirmative defense unless he or she first presents "some credible evidence" of that defense. *People v. Garcia*, 113 P.3d 775, 783–84 (Colo.2005). Whether a defendant meets this burden is a question of law which we review de novo. *Id.* at 784. In so doing, we review the record as a whole for any evidence tending to establish the affirmative defense. *Id.* In determining whether a defendant was entitled to the requested instructions, we consider the evidence in the light most favorable to the defendant. *Cassels v. People*, 92 P.3d 951, 955 (Colo.2004).

## B. Analysis

Section 18–1–708, C.R.S.2010, which defines the affirmative defense of duress, provides in relevant part as follows:

> A person may not be convicted of an offense, other than a class 1 felony, based upon conduct in which he engaged at the direction of another person because of the use or threatened use of unlawful force ... which force or threatened use thereof a reasonable person in his situation would have been unable to resist.

A defendant is entitled to a duress instruction upon a threshold showing of (1) an immediate threat of death or bodily injury; (2) a well-grounded fear the threat will be carried out; and (3) no reasonable opportunity to escape the threatened harm. *See Bailey v. People*, 630 P.2d 1062, 1068 (Colo. 1981); *People v. Preciado–Flores*, 66 P.3d 155, 163 (Colo.App.2002). In addition, any threat must be more than mere speculation or a veiled threat of unspecified future harm. *Preciado–Flores*, 66 P.3d at 163 (citing *People v. Trujillo*, 41 Colo.App. 223, 225, 586 P.2d 235, 237 (1978)).

Here, the only evidence related to duress was defendant's statements during his police interrogation, which were admitted into evidence during the prosecution's case-in-chief. During that interrogation, defendant told police he drove away at his friend's instruction because he wanted an opportunity to dispose of the firearm. Defendant also said: "I got kind of scared and I just like panicked, because I was drunk, and then I just took off." Defendant did not say that his friend pointed the firearm at him or threatened him with it.

Even if we assume that defendant was threatened with death or seriously bodily injury, there is no evidence that he had a well-grounded fear that the threat would be carried out, or that there was no reasonable opportunity for escape. In this instance, (1) the two men were friends with no pending dispute between them; (2) the friend wanted an opportunity to dispose of the firearm; (3) the friend gave defendant the firearm prior to, or during, the chase; and (4) defendant returned it. These facts mitigate any immediate threat and, perhaps more importantly, show that defendant had a clear opportunity to escape.

Therefore, we conclude that there was no evidence of an immediate threat of death or bodily injury, a reasonable belief that a threat would be carried out, or the lack of a reasonable opportunity to escape any threatened harm.

Accordingly, the trial court did not err in refusing to give the jury an instruction on the affirmative defense of duress.

## III. Costs

Defendant's final contention is that the trial court erred in granting the motion for costs of prosecution. We agree and, therefore, we vacate the order assessing costs and remand for further proceedings on this issue.

## A. Standard of Review

The determination of the reasonable amount of the costs of prosecution is left to the sound discretion of the trial court, and we review for an abuse of discretion. § 18–1.3–701(2)(j), C.R.S.2010. A trial court's determination constitutes an abuse of discretion only if it is manifestly arbitrary, unreasonable, or unfair. *People v. Ibarra*, 849 P.2d 33, 38 (Colo.1993).

Statutory interpretation is a question of law which we review de novo. *People v. Valenzuela*, 216 P.3d 588, 590 (Colo.2009).

### B.  Waiver

At the outset, we reject the prosecution's argument that defendant waived appellate review of this claim.  Sentencing occurred on April 9, 2009.  The prosecutor first presented the motion for costs of prosecution in open court at the sentencing hearing, after defense counsel had completed her sentencing statement.  The prosecutor stated: "I have a Motion for Costs of Prosecution.  I have handed defense counsel the evidence disposition stipulation.  I don't think she had had a chance to go over it with her client."  There are no other comments relating to the motion in the transcript of the hearing, nor is there any mention of it in the minute order.

The trial court signed the prosecution's proposed order, which states: "Done in open court this *9th* day of *April,* A.D., *2009* " (italics handwritten, underlining in original).  The order awarded $1785.65 in costs of prosecution, which consisted of $933.00 for expert witnesses, $726.65 for witness travel and lodging, and $126.00 for costs of serving subpoenas.  The mittimus ultimately imposed total costs of $2379.65.

Defendant filed an objection to the motion three business days after the sentencing hearing.  There are no statutory time limits set forth for objecting to a motion for costs, § 18–1.3–701, C.R.S.2010, and unlike the statutes governing restitution, there is no time limit governing the assessment of such costs.  *See People v. Scoggins,* 240 P.3d 331, 333 (Colo.App.2009) (*cert. granted* July 19, 2010) (finding that prosecution could request its costs of extradition five months after defendant's sentence commenced).  *Scoggins* applied the equitable doctrine of laches to determine the timeliness of a later-filed motion for costs of prosecution.  *Id.* at 333–34.

Waiver is an intentional relinquishment or abandonment of a known right.  *Hinojos–Mendoza v. People,* 169 P.3d 662, 668 (Colo.2007) (citing *United States v. Olano,* 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).  Consequently, there is no appeal from a waived right.  *Id.*

We conclude that a defendant is entitled to a fair and reasonable opportunity to review and object to the prosecution's request for its costs; that no such opportunity presented itself at the sentencing hearing here; that under the circumstances the failure to object during the sentencing hearing does not constitute a waiver; and that an objection filed three business days after the sentencing hearing is timely under the circumstances.

### C.  Analysis

Defendant was initially charged with, and went to trial on, criminal attempt to commit first degree murder, § 18–3–102(1), C.R.S.2010(F–2); second degree assault (deadly weapon), § 18–3–203(1)(b), C.R.S.2010(F–4); vehicular eluding, § 18–9–116.5(F–5); and a crime of violence, § 18–1.3–406(2)(a)(I)(A), C.R.S.2010.

The bulk of the trial was consumed with the prosecution's ultimately unsuccessful effort to prove the attempted first degree murder and second degree assault charges.  The primary issue appears to have been the identity of the shooter.

The prosecution paid expenses for the out-of-state shooting victim's travel, lodging, and meals.  In addition, the prosecution called a physician as an expert witness to testify concerning the nature, seriousness, and treatment of the victim's wounds.  Further, the prosecution called Colorado Bureau of Investigation technicians as expert witnesses in the fields of ballistics, gunshot residue, and fingerprints.  Finally, the prosecution endorsed twenty-eight witnesses, mostly local law enforcement personnel, and incurred the expense of mailing subpoenas to those witnesses.

The statute governing costs of prosecution, section 18–1.3–701(1)(a), C.R.S.2010, states:

> Where any person … is convicted of an offense … the court shall give judgment in favor of the state of Colorado, the appropriate prosecuting attorney, or the appropriate law enforcement agency and against the offender … for the amount of the costs of prosecution. . . .

The statute is certainly capable of more than one reasonable interpretation when a defendant is charged in a multi-count indictment or consolidated cases, but convicted of

fewer than all of the counts. Is he or she liable for all costs of prosecution incurred in the proceedings, or only those related to the offense or offenses of which he or she is convicted? Statutory language is ambiguous if it is susceptible of more than one reasonable interpretation. *Vensor v. People,* 151 P.3d 1274, 1277 (Colo.2007).

In addition, the statute is silent on, and appears to not contemplate, the issue presented here. The silence of a statute on matters within its scope renders it ambiguous. *People v. Newton,* 764 P.2d 1182, 1189 (Colo.1988); *People v. Carey,* 198 P.3d 1223, 1229 (Colo.App.2008); *Kauntz v. HCA–Healthone, LLC,* 174 P.3d 813, 819 (Colo.App. 2007).

In our view, this ambiguity cannot be resolved by parsing the language of the statute. And application of the statute to a conviction of fewer than all counts appears to be a matter of first impression in Colorado.

■ On matters of first impression, we may refer to decisions of other jurisdictions construing and applying similar statutes on the same subject for guidance. *People v. Weiss,* 133 P.3d 1180, 1187 (Colo.2006).

Other jurisdictions, state and federal, applying similar statutes or rules, have uniformly held that the costs incurred in the unsuccessful prosecution of substantially unrelated counts cannot be assessed against a defendant. *See United States v. Palmer,* 809 F.2d 1504, 1508–09 (11th Cir.1987) (defendant who is not convicted on all charges cannot be assessed with the prosecution costs of the charges which resulted in acquittal or discharge); *United States v. Fowler,* 794 F.2d 1446, 1450 (9th Cir.1986) (26 U.S.C. § 7206[1] of the tax code authorizes recovery of costs associated with a successful prosecution, not those associated exclusively with the an unsuccessful prosecution); *United States v. DeBrouse,* 652 F.2d 383, 391 (4th Cir.1981)

(28 U.S.C. § 1918(b), which states that "[w]henever *any conviction for any offense* . . . is obtained in a district court, the court may order that the defendant pay the costs of prosecution," does not permit award of costs related to counts of which defendant is acquitted) (emphasis added); *United States v. Troiani,* 595 F.Supp. 186, 187 (N.D.Ill. 1984) (a defendant convicted on fewer than all counts cannot be taxed with costs of counts on which he was acquitted or discharged); *United States v. Miller,* 223 F. 183, 184–85 (S.D.Ga.1915) (defendant cannot be charged with costs of witness whose testimony related only to counts resulting in acquittal); *State v. Lopez,* 36 Kan.App.2d 723, 143 P.3d 695, 699 (2006) (where the statute states that "[i]f the defendant in a criminal case is convicted, the court costs shall be taxed against the defendant," Kan. Stat. Ann. § 22–3801(a) (2005), "it is beyond the district court's discretion to award costs and expenses that were unrelated to prosecuting the crimes of conviction"); *Commonwealth v. Smith,* 239 Pa.Super. 440, 361 A.2d 881, 883–84 (1976) (a defendant cannot be assessed costs attributable to charge resulting in acquittal); *State v. Faulkner,* 75 Wyo. 104, 292 P.2d 1045, 1050–51 (1956) (finding statutory authority to tax the defendant only for prosecution costs on offenses resulting in conviction, not acquittal).[2]

■ Consistent with these authorities, which we find persuasive, we conclude that under our statute a defendant convicted of fewer than all of the counts in a multi-count indictment or criminal information, or in consolidated cases, can be assessed only those costs of prosecution attributable to the counts for which he or she was convicted, if an allocation is practicable.

Section 18–9–116.5(1), C.R.S.2010, defines vehicular eluding:

Any person who, while operating a motor vehicle, knowingly eludes or attempts to

---

1. 26 U.S.C. § 7206(1) provides that a defendant who willfully files a false return "shall be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 . . . or imprisoned not more than 3 years, or both, together with the costs of prosecution."

2. We note that in the civil context, the operative language of C.R.C.P. 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Therefore, the issue becomes which party prevailed, and if that cannot be determined, each party pays its own costs. *See generally Archer v. Farmer Bros. Co.,* 90 P.3d 228 (Colo.2004).

elude a peace officer also operating a motor vehicle, and who knows or reasonably should know that he or she is being pursued by said peace officer, and who operates his or her vehicle in a reckless manner, commits vehicular eluding.

■ There is no motive requirement for vehicular eluding, such as fleeing the scene of a crime to avoid capture. There is no culpable mental state other than the defendant's knowledge that he or she is being pursued by a peace officer. There is no need to prove why the peace officer initiated the pursuit.

■ Vehicular eluding is normally proven through the testimony of the peace officer or officers whom the defendant eluded or attempted to elude. The officers can describe the chase, the indicia they exhibited that they were peace officers, and the defendant's driving. Suffice it to say, there would appear to have been no need here to prove, or present evidence of, the events which occurred in the bar parking lot in order to convict defendant of vehicular eluding. In that sense, the eluding counts are unrelated to the events in the bar parking lot.

We thus conclude that the order assessing all the costs of prosecution cannot stand. On remand, the trial court may assess only those costs that are related to the prosecution of the eluding counts of which defendant was convicted, to the extent an allocation is practicable.

Defendant's judgment of conviction is affirmed, the trial court's order assessing costs of prosecution against defendant is vacated, and the case is remanded for further proceedings consistent with the views expressed in this opinion.

Judge LOEB and Judge J. JONES concur.